**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

STATE OF TEXAS,
TEXAS DEPARTMENT OF FAMILY
AND PROTECTIVE SERVICES, and
ARCHDIOCESE OF GALVESTON-
HOUSTON

    *Plaintiffs*,

v.

ALEX M. AZAR, II, *in his official capacity as Secretary of Health and Human Services*,
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
and
UNITED STATES OF AMERICA,

    *Defendants*.

Civil Action No. 19-0365

## JOINT DISCOVERY/CASE MANAGEMENT PLAN

*(Please restate the instruction before furnishing the responsive information.)*

1. State where and when the conference among the parties required by Rule 26(f) of the Federal Rules of Civil Procedure was held, and identify the counsel who attended for each party, including name, address, bar number, phone and fax numbers, and email addresses.

In Defendants' view, a Rule 26(f) conference is not required. Such conferences are required "[e]xcept in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise." Fed. R. Civ. P. 26(f)(1). The Court has not ordered the parties to confer and, as explained further in the initial disclosure section, this case is exempt from initial disclosure because it is "an action for review on an administrative record," *see* Fed. R. Civ. P. 26(a)(1)(B)(i).

However, to assist the Court in managing this case, counsel for all parties conferred on January 22, 2020 over the phone at 1 p.m. EST. In attendance were:

*For Plaintiff Archdiocese of Galveston-Houston:*

Nicholas Reaves
The Becket Fund for Religious Liberty
1200 New Hampshire Ave., NW
Suite 700
Washington, DC 20003
Phone: 202-349-7212
Fax: 202-955-0090
nreaves@becketlaw.org
S.D. Tex. Bar No. 3498680

Christopher Pagliarella
The Becket Fund for Religious Liberty
1200 New Hampshire Ave., NW
Suite 700
Washington, DC 20003
202-955-0095
Fax: 202-955-0090
cpagliarella@becketlaw.org
S.D. Tex. Bar No. 3517558

*For Plaintiffs State of Texas and Texas Department of Family & Protective Services:*

William T. Thompson
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Phone: (512) 936-2567
Fax: (512) 936-0545
Will.Thompson@oag.texas.gov
Texas Bar No. 24088531
S.D. Tex. Bar No. 3053077

*For Defendants:*

Benjamin T. Takemoto
U.S. Department of Justice, Civil Division, Federal Programs Branch, P.O. Box No. 883, Ben Franklin Station, Washington, DC 20044
Bar Number: 1045253 (Washington, D.C.)

Phone: (202) 532-4252
Fax: (202) 616-8460
benjamin.takemoto@usdoj.gov

2. List the cases related to this one that are pending in any state or federal court with the case number and court, and state how they are related.

Although the Local Rules do not define the term *related*, the parties state that, assuming a broad definition, the following cases may be considered related to this case:

*Buck v. Gordon*, No. 19-cv-00286-RJJ-PJG (W.D. Mich. filed April 15, 2019), also involves a challenge to 45 C.F.R. § 75.300(c).

*Rogers v. HHS*, No. 19-cv-1567 (D.S.C. filed May 30, 2019), and *Maddonna v. HHS*, No. 19-3551-DCC (D.S.C. filed Dec. 20, 2019), involve challenges to an HHS decision that granted to South Carolina a conditional exception from compliance with the religious non-discrimination provision of § 75.300(c) in relation to certain faith-based organizations that receive federal funds as sub-grantees of the state's foster care system.

3. Briefly describe what this case is about.

The dispute in this case concerns an HHS regulation codified at 45 C.F.R. § 75.300(c) and (d), which provides as follows:

> (c) It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on non-merit factors such as age, disability, sex, race, color, national origin, religion, gender identity, or sexual orientation. Recipients must comply with this public policy requirement in the administration of programs supported by HHS awards.
>
> (d) In accordance with the Supreme Court decisions in *United States v. Windsor* and in *Obergefell v. Hodges*, all recipients must treat as valid the marriages of same-sex couples. This does not apply to registered domestic partnerships, civil unions or similar formal relationships recognized under state law as something other than a marriage.

Defendant United States Department of Health and Human Services (HHS) administers the Title IV-E Foster Care Program, which provides funds to Title IV-E agencies (states and Tribes) to assist with the costs of foster care maintenance for eligible children; administrative expenses to manage the program; and training for staff, foster parents, and certain private agency staff. Plaintiffs State of Texas and Texas Department of Family and

Protective Services receive funds from this program. *See* Compl. ¶ 1. Plaintiff Archdiocese of Galveston-Houston alleges that it "would like to partner with Texas to provide foster care services" but that it currently does not do so. *See id.* ¶ 4.

Plaintiffs allege that § 75.300(c)–(d) is not in accordance with law, Compl. ¶¶ 111–23, exceeds statutory authority, *id.* ¶¶ 124–39, is arbitrary and capricious, *id.* ¶ 140–58, and violates the Religious Freedom Restoration Act (RFRA), *id.* ¶ 159–73, the First Amendment to the Constitution, *id.* ¶ 174–94, the Spending Clause of the Constitution, *id.* ¶ 195–222, and the non-delegation doctrine, *id.* ¶ 223–28.

4. Specify the allegation of federal jurisdiction.

Plaintiffs allege that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1346 (civil action against the United States), 1361 (action to compel an officer of the United States to perform his duty) and 5 U.S.C. §§ 702–703 (right of review of agency action).

5. Name the parties who disagree with the plaintiffs' jurisdictional allegations and state their reasons.

Defendants disagree with Plaintiffs' jurisdictional allegations for the reasons stated in their Motion to Dismiss for Lack of Jurisdiction.

Defendants summarize those reasons as follows:

> In short, the case is moot because, assuming *arguendo* there was ever an Article III case or controversy for the Court to adjudicate, it no longer exists. Plaintiffs claim that they are injured because HHS *might* enforce 45 C.F.R. § 75.300(c)–(d) against them. The day after Plaintiffs filed their Complaint, however, HHS announced it would be issuing a Notification of Nonenforcement of Health and Human Services Grant Regulation (and published the notification on its website). Press Release, HHS Press Office, HHS Issues Proposed Rule to Align Grants Regulation with New Legislation, Nondiscrimination Laws, and Supreme Court Decisions (Nov. 1, 2019), https://www.hhs.gov/about/news/2019/11/01/hhs-issues-proposed-rule-to-align-grants-regulation.html. This notification states that the challenged regulation "will not be enforced pending repromulgation." 84 Fed. Reg. 63,809, 63,811 (Nov. 19, 2019).[1] Also on November 1, 2019, HHS announced it would be issuing (and

---

[1] Plaintiffs attempt to minimize this Federal Register notice, arguing that the government has "conceded" that it could change its position. However, the quotation that they point to is taken out of context. In the case that Plaintiffs cite, the plaintiffs argued that they faced a credible threat of enforcement by HHS even though there was no indication that HHS

published on its website), Press Release, HHS Press Office, *supra*, a notice of proposed rulemaking, which proposes to amend the challenged regulation to address the very concerns that Plaintiffs raise in their Complaint. *See* Office of the Assistant Secretary for Financial Resources; Health and Human Services Grants Regulation, 84 Fed. Reg. 63,831 (proposed Nov. 19, 2019). Because HHS has made clear that it will not enforce § 75.300(c)–(d) and is in fact in the process of considering whether to amend the regulation, Plaintiffs' lawsuit, which challenges only those provisions, is moot. *See, e.g.*, *Moore v. Brown*, 868 F.3d 398, 406–07 (5th Cir. 2017).

In addition, Plaintiffs lack standing because they have not alleged a cognizable injury-in-fact. Plaintiffs do not allege any facts to demonstrate that HHS has ever taken enforcement action under § 75.300(c)–(d) since its promulgation in 2016, much less any facts to show that an enforcement action against Plaintiffs is "*certainly* impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565 n.2 (1992)). Indeed, the Archdiocese of Galveston-Houston does not even participate in the State's foster care system at this time.

Plaintiffs' Response:

While Plaintiffs do not understand the Case Management Plan to be the place to present opposing arguments, Plaintiffs provide the following (brief) response to Defendants' jurisdictional argument above.

With regard to standing, Plaintiffs have alleged facts sufficient to show that when the complaint was filed (*Energy Mgmt. Corp. v. City of Shreveport*, 397 F.3d 297, 302 (5th Cir. 2005)), they faced a substantial risk of enforcement of Section 75.300. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019); *Sabine River Auth. v.*

---

had any intention of enforcing § 75.300(c) based on the plaintiffs' religiously motivated conduct in that case. The plaintiffs reasoned, "[n]othing prevents Federal Defendants from changing their mind tomorrow—or two years from now." Pls.' Opp. to Fed. Defs.' Mot. to Dismiss at 30, *Buck v. Gordon*, No. 1:19-cv-00286-RJJ-PJG (W.D. Mich. Aug. 9, 2019), ECF No. 54. HHS argued in response that the plaintiffs had to make *some* showing that "the same conduct has drawn enforcement actions or threats of enforcement in the past," because otherwise *every* pre-enforcement action would be ripe (which is not the case). Fed. Defs.' Reply Br. at 4, *Buck v. Gordon*, No. 1:19-cv-00286-RJJ-PJG (W.D. Mich. Aug. 20, 2019), ECF No. 61. As HHS observed, the plaintiffs' argument would render ripeness doctrine "virtually void," because "[a] governmental entity can almost *always* change its position on whether to enforce a law or regulation in a particular context." *Id.* At any rate, any uncertainty regarding the possibility of enforcement that existed when *Buck* was decided has been eliminated with the publication of the Nonenforcement Notification two months later.

*U.S. Dep't of Interior,* 951 F.2d 669, 675 (5th Cir. 1992) (finding "a substantial risk" of future injury even though "there is necessarily some speculation attendant to predictions of this sort"). First, there is a substantial risk that pending or future litigation could require HHS to enforce Section 75.300. For example, when HHS issued a partial exemption from the SOGI Rule to South Carolina, HHS was sued by private plaintiffs demanding that HHS enforce the SOGI Rule. *See* Complaint, Doc. 1, 23, *Maddonna v. HHS*, No. 6:19-cv-448 (D.S.C. Feb. 15, 2019) (arguing the exemption is unlawful under the APA). Second, a change in administrations—or even just a change of heart—could result in the immediate enforcement of Section 75.300, and (despite a direct request from Texas asking for an exemption), Defendants had not provided any assurances that Section 75.300 would not be enforced. Combined with the ongoing concerns described below, there is no question that based on the facts alleged, Plaintiffs have shown a substantial risk of injury. What is more, Defendants' focus on participation in Texas' foster care system is misplaced. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) ("When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law.").

For related reasons, the challenge cannot be dismissed as moot. HHS made clear in announcing non-enforcement that: (1) it was not enforcing the rule "pending repromulgation," 84 Fed. Reg. at 63810; (2) "merely because a regulation is not being enforced does not mean that it has been repealed or replaced. The Final Rule still appears in the Code of Federal Regulations" 84 Fed. Reg. at 63,832; and (3) that the proposed repeal "should be properly viewed as a proposal," not a certainty, *id.* This is consistent with legal principles regarding the "full and fair hearing" due comments. *Advocates for Highway & Auto Safety v. Fed. Highway Comm'n*, 28 F.3d 1288, 1292 (D.C. Cir. 1994) (Administrative Procedure Act requires "open[ness] to persuasion" by comments). And the Department of Justice has conceded in other litigation challenging the rule that the government "can almost *always* change its position on whether to enforce a law or regulation." *Buck v. Gordon*, No. 1:19-CV-286, --- F. Supp. 3d ---, 2019 WL 4686425, at *13 (W.D. Mich. Sept. 26, 2019); (emphasis in original).

6. List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.

None.

7. List anticipated interventions.

The parties are aware that Christian Homes and Family Services, which states that it is a faith-based child placement agency, is considering filing a motion to intervene as a plaintiff.

8. Describe class-action issues.

None.

9. State whether each party represents that it has made the initial disclosures required by Rule 26(a). If not, describe the arrangements that have been made to complete the disclosures.

The parties disagree that initial disclosures are required, and state their positions as follows.

**Plaintiffs:**

Plaintiffs believe that limited initial disclosures are appropriate in this case because this case is not "based *solely* on an administrative record." Fed. R. Civ. P. 26, advisory committee's note (emphasis added). Plaintiffs bring claims under the U.S. Constitution and RFRA that—even though they raise challenges to a federal regulation—"permit[] admission of new evidence to supplement the record." *Id. See, e.g., Franciscan All., Inc. v. Azar*, No. 7:16-cv-108, 2019 WL 5157100, at *7 n.6 (N.D. Tex. Oct. 15, 2019) (refusing to apply the "record rule" to RFRA claims); *O Centro Espirita Beneficiente Uniao Do Vegetal v. Duke*, 286 F. Supp. 3d 1239, 1260–61 (D.N.M. 2017) ("RFRA and the APA provide two distinct causes of action with different standards of review, and therefore this Court rejects the argument that the record rule applies to Plaintiffs' RFRA claims."); *N. Arapaho Tribe v. Ashe*, 925 F. Supp. 2d 1206, 1211 (D. Wyo. 2012) (same).

Similarly, Plaintiffs maintain that some APA claims, and the standing allegations supporting all claims, may be supported by extra-record evidence. *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002) ("[The petitioners] are not confined to the administrative record. . . . Beyond the pleading stage, they must support their claim of injury with evidence."); *Mass. v. EPA*, 415 F.3d 50, 55 (D.C. Cir. 2005) ("[T]o establish standing, a petitioner challenging agency action has the same burden of production as a plaintiff moving for summary judgment in the district court: it must support each element of its claim to standing by affidavit or other evidence." (internal quotation marks omitted)), *rev'd on other grounds*, 549 U.S. 497 (2007). *See also Chesapeake Climate Action Network v. Export-Import Bank of the U.S.*, 78 F. Supp. 3d 208, 217 (D.D.C. 2015) ("Although judicial review of agency action is typically confined to the administrative record, . . . plaintiffs may submit extra-record evidence to establish standing.").

Defendants' arguments to the contrary misconstrue the law by, among other things, citing cases in which a federal court is sitting in appellate review of an earlier agency adjudications. *See, e.g., Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 10 (D.R.I. 2004) ("Harvard Pilgrim argues that the constitutional nature of its claims negates the requirement that it first present those claims to the administrative

agency."); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1237 (D.N.M. 2014). This is not such a case; Plaintiffs did not bring (and could not have brought) their RFRA and constitutional claims before the agency in the first instance. This Court is thus not sitting in review of an agency adjudication, making Defendants' case law irrelevant. Plaintiffs have instead brought RFRA and constitutional claims separate from their APA claims. *See N. Arapaho Tribe v. Ashe*, 925 F. Supp. 2d 1206, 1211 (D. Wyo. 2012) ("RFRA provides Plaintiffs with a cause of action that is separate from the APA."); *O Centro Espirita Beneficiente Uniao Do Vegetal v. Duke*, 286 F. Supp. 3d 1239, 1260-61 (D.N.M. 2017) (citing several other cases in which RFRA and APA claims were considered separately).

Accordingly, Plaintiffs expect the parties to make limited initial disclosures in this matter once the Court resolves the dispute per F.R.C.P. 26(a)(1)(C).

**Defendants:**

In Defendants' view, this case is exempt from initial disclosure. Rule 26(a) "requires early disclosure, without need for any request, of four types of information that have been customarily secured early in litigation through formal discovery." Fed. R. Civ. P. 26(a) advisory committee's note to 1993 amendment. However, in certain cases where "discovery would not be appropriate or would be unlikely," initial disclosure is not required. *See* Fed. R. Civ. P. 26(a) advisory committee's note to 1993 amendment; Fed. R. Civ. P. 26(b) (listing proceedings that are exempt from initial disclosure).

As "an action for review on an administrative record," this is one such case. *See* Fed. R. Civ. P. 26(a)(B)(i). Plaintiffs have challenged § 75.300(c)–(d) under the Administrative Procedure Act (APA). The APA provides a limited waiver of sovereign immunity, *Ala.-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488–89 (5th Cir. 2014), under which one may challenge final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)–(C). A condition for this waiver, however, is a limitation of judicial review to "the whole record or those parts of it cited by a party." *Id.* § 706. Discovery and supplementation of the administrative record is generally inappropriate because "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court," *Budhathoki v. Nielsen*, 898 F.3d 504, 517 (5th Cir. 2018) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). As the Complaint is a direct challenge to § 75.300(c)–(d), *See* Compl. ¶¶ 111–228, ECF No. 1 (alleging that § 75.300(c)–(d) is arbitrary and capricious, not in accordance with law, contrary to certain constitutional rights, and in excess of statutory authority), the aforementioned limitations on judicial review apply. Initial disclosure and discovery are therefore inappropriate.

Plaintiffs argue that this case is, in fact, subject to initial disclosure because it is not "based solely on an administrative record," Fed. R. Civ. P. 26(a)(1) advisory committee's note to 2000 amendment. However, as explained above, this case *is* based solely on the administrative record. The Advisory Committee note that Plaintiffs quote confirms this. It states in full, "The exclusion of an action for review on an administrative record, for example, is intended to reach a proceeding that is framed as an 'appeal' based solely on an administrative record. The exclusion should not apply to a proceeding in a form that commonly permits admission of new evidence to supplement the record." Fed. R. Civ. P. 26(a)(1) advisory committee's note to 2000 amendment. Challenges to final agency action do not commonly permit admission of new evidence. *See Budhathoki*, 898 F.3d at 517. Rather, supplementation of the record is permitted only when "the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency." *Medina Cty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)). Plaintiffs have not filed a motion to supplement the record, let alone demonstrated that there are "unusual circumstances" present here. Accordingly, Plaintiffs' challenge is based solely on the administrative record and is not subject to initial disclosure.

Plaintiffs also argue that their constitutional and statutory "claims" permit admission of new evidence to supplement the record. However, the text of the APA refutes this argument. Once again, the focus of judicial review in challenges to agency action—including challenges to agency action "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C)—"should be the administrative record already in existence, not some new record made initially in the reviewing court." *See Budhathoki*, 898 F.3d at 517 (quoting *Pitts*, 411 U.S. at 142). Creative pleadings that list § 706(2)(B) (i.e., constitutional) and § 706(2)(C) (i.e., statutory) arguments in separate counts from § 706(2)(A) (i.e., arbitrary and capricious) arguments cannot overcome § 706's restriction of judicial review to "the whole record or those parts of it cited by a party." "The APA's restriction of judicial review to the administrative record would be meaningless if any party seeking review based on statutory or constitutional deficiencies was entitled to broad-ranging discovery." *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 10 (D.R.I. 2004). Furthermore, permitting such creative pleading would "incentivize every unsuccessful party to agency action to allege . . . constitutional violations to trade in the APA's restrictive procedures for the more even-handed ones of the Federal Rules of Civil Procedure." *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1238 (D.N.M. 2014). Accordingly, this Court should reject Plaintiffs' attempt to circumvent § 706's record review limitation.

Plaintiffs also argue that record review limitations apply differently to agency adjudications as compared to rulemaking. Specifically, Plaintiffs attempt to distinguish *Harvard Pilgrim Health Care of New England* and *Jarita Mesa Livestock Grazing*

9

*Association* on this basis. However, the APA makes no such distinction. Rather, it limits judicial review of *all* agency action, including rulemaking, 5 U.S.C. § 553, and adjudications, *id.* § 554, to "the whole record or those parts of it cited by a party." *See id.* § 706. For this reason, courts have limited their review to the administrative record for all forms of agency action. *See, e.g.*, *District Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015) (limiting review to the administrative record of a rulemaking); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419–20 (1971) (limiting review to the administrative record of agency action that was neither rulemaking nor adjudication).

10. Describe the proposed agreed discovery plan, including:

   a. responses to all the matters raised in Rule 26(f), including any agreements (and disputes) concerning electronic discovery;

   b. when and to whom the plaintiff anticipates it may send interrogatories;

   c. when and to whom the defendant anticipates it may send interrogatories;

   d. of whom and by when the plaintiff anticipates taking oral depositions;

   e. of whom and by when the defendant anticipates taking oral depositions;

   f. (i) the date experts for plaintiff (or party with the burden of proof on an issue) will be designated and their reports provided to opposing party;

   (ii) the date experts for defendant will be designated and their reports provided to opposing party;

   g. list of expert depositions the plaintiff (or party with the burden of proof on an issue) anticipates taking and their anticipated completion date (*see* Rule 26(a)(2)(B) (expert report)); and

   h. list of expert depositions the defendant (or opposing party) anticipates taking and their anticipated completion date (*see* Rule26(a)(2)(B) (export report)).

Plaintiffs reserve the right to seek discovery to support their claims (see response to question 9 above), but at this time do not plan to seek discovery from Defendants.

As discussed in the initial disclosure section, Defendants believe that discovery is inappropriate as Defendants contend this is a record review case.

11. If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.

Not applicable (see question 10).

12. Specify the discovery beyond initial disclosures that has been undertaken to date.

None.

13. State the date the planned discovery can reasonably be completed.

Not applicable (see question 10).

14. Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.

The parties do not believe that this case can be settled. However, they agree that this case can be promptly resolved through motion to dismiss or summary judgment briefing. Plaintiffs have filed a Joint Motion for Partial Summary Judgment, and Defendants have filed a Motion to Dismiss for Lack of Jurisdiction.

15. Describe what each party has done or agreed to do to bring about a prompt resolution of this dispute.

Plaintiffs have filed a Motion for Partial Summary Judgment, and Defendants have filed a Motion to Dismiss for Lack of Jurisdiction.

Defendants believe the Court should resolve the jurisdictional objections raised in Defendants' Motion to Dismiss for Lack of Jurisdiction before reaching the merits or requiring Defendants to respond to Plaintiffs' summary judgment motion.

Plaintiffs believe it would be more appropriate for the parties to brief both the Motion to Dismiss and the Motion for Partial Summary Judgment concurrently as both motions focus on purely legal issues for which there are no facts in dispute. This would allow the Court to consider resolving both motions together thus conserve judicial resources, expedite final resolution of this case, and provide Plaintiffs with the certainty they need.

16. From the attorneys' discussion with their client(s), state the alternative dispute resolution techniques that are reasonably suitable.

The parties do not believe that this case is amenable to alternative dispute resolution.

17. Magistrate judges may now hear jury and non-jury trials. Indicate the parties' joint position on a trial before a magistrate judge.

The parties do not agree to having this dispute heard before a magistrate judge.

18. State whether a jury demand has been made and if it was made on time.

Plaintiffs made a timely jury demand for all claims properly heard before a jury in their complaint, though the parties anticipate that this case will be resolved on the motions without a need for trial.

Defendants believe that a jury trial would be impermissible and argue as follows:

> "Since there is no generally applicable jury trial right that attaches when the United States consents to suit, the accepted principles of sovereign immunity require that a jury trial right be clearly provided in the legislation creating the cause of action." *Lehman v. Nakshian*, 453 U.S. 156, 162 n.9 (1981). However, neither of the statutes that the Complaint invokes (the APA and RFRA) clearly provide for a jury trial. *See W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1124 (9th Cir. 2009) (observing that the APA does not "provide a right to a trial by jury"); *Davis v. BOP*, No. 15–cv–0884–WJM–MJW, 2017 WL 6335624, at *3 (D. Colo. Dec. 12, 2017) (observing that "RFRA does not explicitly provide for a jury trial and therefore sovereign immunity from a jury trial has not been waived for claims arising under this statute"). Furthermore, several of Plaintiffs' arguments are pure questions of law (e.g., that the regulation violates the APA, the Spending Clause, or the non-delegation doctrine). The Court, not a jury, must decide such questions. *See Sparf v. United States*, 156 U.S. 51, 89 (1895) ("The judge decides questions of law; the jury, questions of fact.").

19. Specify the number of hours it will take to try this case (including jury selection, presentation of evidence, counsel's opening statements and argument, and charging the jury).

Because the dispute before this Court is primarily a legal dispute, Plaintiffs believe that this case will most likely be resolved on the motions without need for a trial; that said, should this case go to trial, Plaintiffs estimate that 16 hours will be necessary.

Defendants believe the Court lacks jurisdiction over this case for the reasons explained in their Motion to Dismiss for Lack of Jurisdiction. Should the Court determine it has jurisdiction, Defendants believe the case should be resolved on summary judgment motions. A trial is not appropriate or necessary as Defendants contend this is a record review case.

20. List pending motions that could be ruled on at the initial pretrial conference.

Defendants have sought an extension of time to respond to Plaintiffs' Motion for Partial Summary Judgment until twenty-one days after the Court has resolved Defendants'

pending Motion to Dismiss for Lack of Jurisdiction. Defendants request that this motion be ruled on before the initial pretrial conference, as Defendants' current deadline to respond to Plaintiffs' Motion for Partial Summary Judgment is March 16, 2020.

21. List other motions pending.

Plaintiffs' Motion for Partial Summary Judgment; Defendants' Motion to Dismiss for Lack of Jurisdiction.

22. Indicate other matters peculiar to this case, including but not limited to traditional and electronic discovery issues, that deserve the special attention of the court at the conference.

None.

23. Certify that all parties have filed Disclosure of Interested Parties as directed in the Order for Conference and Disclosure of Interested Parties, listing the date of filing for original and any amendments.

Plaintiff Archdiocese of Galveston Houston filed its Disclosure of Interested Parties on 11/15/2019.

Plaintiffs State of Texas and Texas Department of Family & Protective Services filed its Disclosure of Interested Parties on 11/18/2019.

Defendants filed their Disclosure of Interested Parties on February 19, 2020.

24. List the names, bar numbers, addresses, email addresses, and telephone numbers of all counsel.

*For Plaintiff Archdiocese of Galveston Houston*:

Eric C. Rassbach
The Becket Fund for Religious Liberty
1200 New Hampshire Ave., NW
Suite 700
Washington, DC 20036
Phone: 202-349-7214
Fax: 202-955-0090
erassbach@becketlaw.org
S.D. Texas Bar No. 87245

Nicholas R. Reaves

The Becket Fund for Religious Liberty
1200 New Hampshire Ave., NW
Suite 700
Washington, DC 20036
Phone: 202-349-7212
Fax: 202-955-0090
nreaves@becketlaw.org
S.D. Tex. Bar No. 3498680

Mark L. Rienzi
The Becket Fund for Religious Liberty
1200 New Hampshire Ave., NW
Suite 700
Washington, DC 20036
Phone: 202-955-0095
Fax: 202-955-0090
mrienzi@becketlaw.org
S.D. Tex. Bar No. 3517559

Christopher Pagliarella
The Becket Fund for Religious Liberty
1200 New Hampshire Ave., NW
Suite 700
Washington, DC 20036
Phone: 202-955-0095
Fax: 202-955-0090
cpagliarella@becketlaw.org
S.D. Tex. Bar No. 3517558

*For Plaintiffs State of Texas and Texas Department of Family & Protective Services:*

David J. Hacker
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Phone: (512) 936-2330
David.Hacker@oag.texas.gov
Texas Bar. No. 24103323
S.D. Tex. Bar No. 3065085

William T. Thompson
Office of the Attorney General
P.O. Box 12548

Austin, Texas 78711-2548
Phone: (512) 936-2567
Fax: (512) 936-0545
Will.Thompson@oag.texas.gov
Texas Bar No. 24088531
S.D. Tex. Bar No. 3053077

Benjamin S. Walton
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Phone: (512) 463-0447
Fax: (512) 320-0667
Benjamin.Walton@oag.texas.gov
Texas Bar. No. 24075241
S.D. Tex. Bar No. 2338094

*For Defendants:*

Benjamin T. Takemoto
Bar Number: 1045253 (Washington, D.C.)
U.S. Department of Justice, Civil Division, Federal Programs Branch, P.O. Box No. 883, Ben Franklin Station, Washington, DC 20044
Phone: (202) 532-4252
benjamin.takemoto@usdoj.gov


| | |
|---|---|
| Dated: February 28, 2020 | Respectfully submitted, |
| KEN PAXTON<br>Attorney General of Texas | Joseph H. Hunt<br>Assistant Attorney General |
| JEFFREY C. MATEER<br>First Assistant Attorney General | Michelle R. Bennett<br>Assistant Branch Director<br>Civil Division |
| RYAN L. BANGERT<br>Deputy Attorney General for Legal Counsel | /s/ *Benjamin T. Takemoto* |

DAVID J. HACKER
Special Counsel to the First Assistant

PATRICK K. SWEETEN
Associate Deputy Attorney General for Special Litigation

/s/ *William T. Thompson*
WILLIAM T. THOMPSON
Special Counsel for Civil Litigation
Texas Bar No. 24088531
Will.Thompson@oag.texas.gov

Special Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548

BENJAMIN S. WALTON
Texas Bar No. 24075241
Assistant Attorney General
General Litigation Division
P.O. Box 12548
Austin, Texas 78711
Phone: (512) 463-2120
Fax: (512) 320-0667
Benjamin.Walton@oag.texas.gov

*Attorneys for TEXAS and DFPS*

/s/ *Eric C. Rassbach*
Eric C. Rassbach
Attorney-in-charge
Texas Bar No. 24013375
S.D. Texas Bar No. 872454
Nicholas R. Reaves
S.D. Texas Bar No. 3498680
Mark L. Rienzi
S.D. Texas Bar No. 3517559
Christopher C. Pagliarella
S.D. Texas Bar No. 3517558
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW
Suite 700
Washington, DC 20036

BENJAMIN T. TAKEMOTO
(DC Bar # 1045253)
Trial Attorney (Attorney-in-Charge)
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*

(202) 955-0095
(202) 955-0090
erassbach@becketfund.org

*Attorneys for Archdiocese of Galveston-Houston*