**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | |
|---|---|
| STATE OF TEXAS;<br>TEXAS DEPARTMENT OF<br>FAMILY AND PROTECTIVE<br>SERVICES; ARCHDIOCESE OF<br>GALVESTON-HOUSTON,<br><br><br>*Plaintiffs*,<br><br>v.<br><br>ALEX AZAR, Secretary of the United<br>States Department of Health and Human<br>Services; UNITED STATES<br>DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES; the UNITED<br>STATES OF AMERICA,<br><br>*Defendants.* | Civil Action No. 3:19-cv-00365 |

**PLAINTIFFS' JOINT OPPOSITION TO MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ................................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDING .............................................................. 2

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW .................................... 2

FACTUAL AND PROCEDURAL BACKGROUND ............................................................ 4

SUMMARY OF THE ARGUMENT ...................................................................................... 7

ARGUMENT ........................................................................................................................... 9

    I.      This lawsuit is not moot .................................................................................... 9

    II.     Plaintiffs had standing when their complaint was filed ............................ 19

    III.    HHS's Texas letter does not change the Court's analysis ........................ 23

CONCLUSION ...................................................................................................................... 25

CERTIFICATE OF SERVICE ............................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advocates for Highway & Auto Safety v. Fed. Highway Comm'n*,
   28 F.3d 1288 (D.C. Cir. 1994) ........................................................................16

*Ass'n of Am. Physicians & Surgeons v. Tex. Med. Bd.*,
   627 F.3d 547 (5th Cir. 2010) ..........................................................................3, 9

*Buck v. Gordon*,
   No. 1:19-CV-286, 2019 WL 4686425 (W.D. Mich. Sept. 26, 2019) ............................*passim*

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.*,
   779 F.3d 258 (5th Cir. 2015) ......................................................................19, 21

*De Niz Robles v. Lynch*,
   803 F.3d 1165 (10th Cir. 2015)........................................................................13

*Decker v. Nw. Envtl. Def. Ctr.*,
   568 U.S. 597 (2013)..........................................................................................12

*Del-Ray Battery Co. v. Douglas Battery Co.*,
   635 F.3d 725 (5th Cir. 2011) ............................................................................3

*Dep't of Homeland Sec. v. New York*,
   140 S. Ct. 599 (Jan. 27, 2020)..........................................................................17

*Duarte ex rel. Duarte v. City of Lewisville*,
   759 F.3d 514 (5th Cir. 2014) ............................................................................19

*Dumont v. Lyon*,
   No. 2:17-cv-13080 (E.D. Mich. Feb 24, 2020)................................................18

*Family Equality v. Azar*,
   No. 1:20-cv-02403 (S.D.N.Y. April 2, 2020) ...............................................7, 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ....................................................................................1, 3, 9

*Hous. Chronicle Publ'g Co. v. City of League City*,
   488 F.3d 613 (5th Cir. 2007)............................................................................22

*Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
   335 F.3d 357 (5th Cir. 2003) ........................................................................9, 11

*Little v. KPMG LLP,*
  575 F.3d 533 (5th Cir. 2009) ...............................................................................3

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ............................................................................................3

*Maddonna v. HHS,*
  No. 6:19-cv-3551 (D.S.C. Dec. 20, 2019) ...................................................6, 18

*Maddonna v. HHS,*
  No. 6:19-cv-448 (D.S.C. Feb. 15, 2019) ........................................................ 5-6

*Marouf v. Azar,*
  No. 1:18-cv-378 (D.D.C. Mar. 22, 2018) ...........................................................18

*McKinley v. Abbott,*
  643 F.3d 403 (5th Cir. 2011) .................................................................. 1, 8, 9, 10

*McMahon v. Fenves,*
  946 F.3d 266 (5th Cir. 2020) ..............................................................................3

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007) ..........................................................................................20

*Miraglia v. Bd. of Supervisors of La. State Museum,*
  901 F.3d 565 (5th Cir. 2018) .............................................................................11

*Moore v. Brown,*
  868 F.3d 398 (5th Cir. 2017) ......................................................................*passim*

*New York v. U.S. Dep't of Health & Human Servs.,*
  414 F. Supp. 3d 475 (S.D.N.Y. 2019) ...............................................................17

*Parents Involved in Community Sch. v. Seattle Sch. Dist. No. 1,*
  551 U.S. 701 (2007) ..........................................................................................12

*Pederson v. La. State Univ.,*
  213 F.3d 858 (5th Cir. 2000) .............................................................................12

*Pennsylvania v. Trump,*
  351 F. Supp. 3d 791 (E.D. Pa. 2019) ...............................................................17

*Pennzoil Co. v. FERC,*
  645 F.2d 360 (5th Cir. May 1981) .....................................................................11

*Perez v. Mortgage Bankers Ass'n,*
  575 U.S. 92 (2015) ............................................................................................11

*Physician Hosps. of Am. v. Sebelius,*
    691 F.3d 649 (5th Cir. 2012) ........................................................................... 3

*Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries,*
    177 F.3d 380 (5th Cir. 1999) ........................................................................... 9

*Porter v. Clarke,*
    852 F.3d 358 (4th Cir. 2017) ......................................................................... 16

*Rogers v. HHS,*
    No. 6:19-cv-1567 (D.S.C. May 30, 2019) ................................................... 6, 17

*Stauffer v. Gearhart,*
    741 F.3d 574 (5th Cir. 2014) ........................................................................... 9

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ...................................................................................... 20

*Stringer v. Whitley,*
    942 F.3d 715 (5th Cir. 2019) ......................................................................... 22

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ...................................................................................... 19

*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019) ................................................................. *passim*

*Texas v. United States,*
    945 F.3d 355 (5th Cir. 2019) ................................................................... 15, 22

*U.S. Steel Corp. v. U.S. E.P.A.,*
    595 F.2d 207 (5th Cir. 1979) ......................................................................... 16

*United States v. Johnson,*
    632 F.3d 912 (5th Cir. 2011) ......................................................................... 16

**Other Authorities**

45 C.F.R. § 75.102 .......................................................................................... 23, 24

45 C.F.R. § 75.205 .............................................................................................. 13

45 C.F.R. § 75.207 .............................................................................................. 13

45 C.F.R. § 75.300 ...................................................................................... *passim*

84 Fed. Reg. 63,809 (Nov. 19, 2019) ............................................................... 6, 11

84 Fed. Reg. 63,831 (Nov. 19, 2019) ........................................................................*passim*

85 Fed. Reg. 4136 (Jan. 23, 2020) ...............................................................................10

## INTRODUCTION

Plaintiffs could be working together to pair Texas children with loving families. Defendants have taken, and continue to hold to, the position that such a partnership violates federal law if done on terms consistent with the Archdiocese's sincerely held beliefs on the nature of marriage. But despite the obvious impediment existing federal law poses to any possible partnership, Defendants remarkably claim this dispute is moot and, alternatively, that Plaintiffs lack standing. Why? Because Defendants have made a *non-binding* promise to *temporarily* halt enforcement of a rule *until* completing a rulemaking that only *may* displace parts of the rule. Such non-binding half-measures are hardly enough to displace the existing (and illegal) federal law in place *right now*—which is why Defendants themselves announced in the Federal Register that the relevant law remains applicable to Plaintiffs' behavior.

That falls far short of the "stringent" standard of mootness, which requires that "subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). This is not a case about a long-gone policy that might someday "recur"; rather, the regulation that wrongfully constrains Plaintiffs continues to apply to their conduct *right now*, chilling their efforts to work together to address the foster care crisis in Texas. For the same reason, this case is nothing like the main case Defendants rely on, *Moore v. Brown*, 868 F.3d 398 (5th Cir. 2017). Defendants contend that *Moore* controls here, but mootness was found in *Moore* because the government "made clear that its public event rule *does not apply* to Plaintiff's desired activity" once the desired activity was "explicitly spelled out" and the government "had the opportunity

1

to determine whether that speech actually violated the public event rule." *Id.* at 407 (emphasis added). Here, by contrast, Defendants *admit* the rule applies to Plaintiffs, and they refuse to disclaim that the rule is the law. Moreover, Defendants' brief alternative argument that no injury *ever* existed for standing purposes—even though "standing is assessed as of the date on which suit was filed," *Texas v. EEOC*, 933 F.3d 433, 449 (5th Cir. 2019)—is not only inconsistent with binding precedent on pre-enforcement challenges, but also belied by their own notice of non-enforcement.

The Court should deny the motion to dismiss and move on to the merits. Plaintiffs believe that an oral hearing would aid the Court in resolving this motion, and request such a hearing.

## NATURE AND STAGE OF THE PROCEEDING

This is an action for injunctive, declaratory, and Administrative Procedure Act (APA) relief against the federal government for an administrative regulation, 45 C.F.R. § 75.300(c)-(d), that places restrictions on state foster care programs that, as described further in the pending joint motion for partial summary judgment, ECF No. 15, are inconsistent with the Constitution and federal law, including the procedural and substantive requirements of the APA. The federal government has filed a motion to dismiss, ECF No. 22, which is at issue here; Plaintiffs' motion for partial summary judgment is also pending, with briefing stayed pending the disposition of the motion to dismiss.

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

Defendants seek to dismiss this lawsuit as moot under Fed. R. Civ. P. 12(b)(1), based on a temporary notice of non-enforcement of a still-effective regulation pending a proposed revision. Alternatively, they ask the Court to dismiss the complaint for lack of standing under

Fed. R. Civ. P. 12(b)(1), and specifically lack of an Article III injury on the theory that the *temporary* notice and *proposed* revision cure any injury to parties who seek to engage in conduct that they hold remains illegal under the challenged regulation.

Under Federal Rule of Civil Procedure 12(b)(1), "[t]he party asserting jurisdiction has the burden of establishing it. At the motion-to-dismiss stage, this means 'alleg[ing] a plausible set of facts establishing jurisdiction.'" *McMahon v. Fenves*, 946 F.3d 266, 270 (5th Cir. 2020) (quoting *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012) (second alteration original) and citing Fed. R. Civ. P. 12(b)(1)). "When standing is challenged on the basis of the pleadings, [the Court] must accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party." *Ass'n of Am. Physicians & Surgeons v. Tex. Med. Bd.,* 627 F.3d 547, 550 (5th Cir. 2010) (internal quotation marks and citation omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted); *see also Little v. KPMG LLP,* 575 F.3d 533, 540 (5th Cir. 2009) ("At the pleading stage, allegations of injury are liberally construed.").

As to a claim of mootness, however, "[t]he party asserting mootness bears the 'heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again.'" *Del-Ray Battery Co. v. Douglas Battery Co.*, 635 F.3d 725, 729 (5th Cir. 2011) (quoting *Friends of the Earth*, 528 U.S. at 170). This is a "stringent" standard and must be "absolutely clear." *Friends of the Earth*, 528 U.S. at 189 (citation omitted).

## FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to Defendants' motion are as follows.[1]

**Factual Background Leading to Suit:** The Texas Department of Family and Protective Services works to care for children who cannot live safely at home, spending $1-2 billion a year on foster care, over 40 percent of which is federally funded. ECF No. 1 ¶¶ 27-30. To fulfill this mission, the State of Texas has taken steps to ensure it can contract with many different licensed residential child care providers, including child placing agencies, with varying views on religion and marriage, even passing a law to protect such providers. ECF No. 1 ¶¶ 36-39; *see* ECF No. 15-1 Ex. C (press release of Texas Conference of Catholic Bishops supporting bill on passage). The Archdiocese of Galveston-Houston shares the State's concern for the care of foster children, following the Catholic faith's fundamental teaching to care for the orphan, and currently operates the St. Joseph's Ministry to encourage foster care among its charitable ministries. ECF No. 1 ¶¶ 15-16, 46-47; *see* ECF No. 15-1 Ex. F (materials of the Ministry described in the Complaint). The Archdiocese maintained a licensed ministry relating to state foster care until the early 2010s and wishes to be free to again consider how to provide foster care support services to the neediest children, alone or in partnership. ECF No. 1 ¶¶ 47-50. However, the Archdiocese cannot endorse or certify relationships inconsistent with its sincere religious beliefs, including its understanding of the nature of the human person,

---

[1] A more extended discussion of the facts is set forth in the complaint, ECF No. 1, and Plaintiffs' joint motion for partial summary judgment, ECF No. 15.

marriage, and the family. As such, it cannot provide home studies and certifications for unmarried cohabitating or same-sex married couples. ECF No. 1 ¶¶ 47-50.

The U.S. Department of Health and Human Services (HHS) has, since December 2016 and continuing to today, maintained a regulation that conditions federal awards of foster care and adoption funding on all recipients ensuring no differential treatment "on non-merit factors such as . . . religion, gender identity, or sexual orientation . . . in the administration of programs," and further requires that all recipients "treat as valid the marriages of same-sex couples." 45 C.F.R. § 75.300(c)-(d) ("Section 75.300"); *see* Mot. Dismiss, ECF No. 22 at 2. The federal government has previously acknowledged authority to enforce past or ongoing violations of this Section by pulling funding from a state's foster care program, on which any ministry supported by the Archdiocese would rely. ECF No. 1 ¶ 96; *see Buck v. Gordon*, No. 1:19-CV-286, 2019 WL 4686425, at *14 (W.D. Mich. Sept. 26, 2019) ("The State premises its position [excluding a Catholic provider that could not certify same-sex couples] on concern that the State will lose all federal funding for foster and adoption services if the federal government enforces § 45 C.F.R. 75.300(c). The federal government has not denied that risk.").

The State of South Carolina subsequently sought, and in February 2018 received, an exemption from a portion of Section 75.300 (the "South Carolina letter"). ECF No. 1 ¶¶ 98-99, 175; *see* ECF No. 15-1 Ex. G, I (letter requesting and letter granting exemption). This exemption was subsequently challenged in federal court by plaintiffs seeking both to compel enforcement and to bar the federal government from issuing any future exemptions; both cases are live. ECF No. 1 ¶ 98; *see* Complaint at 23, ECF No. 1, *Maddonna v. HHS*, No. 6:19-

cv-448 (D.S.C. Feb. 15, 2019) (original case); Complaint at 32, ECF No. 1, *Maddonna v. HHS*, No. 6:19-cv-3551 (D.S.C. Dec. 20, 2019) (refiled matter); Complaint at 38, ECF No. 1 *Rogers v. HHS*, No. 6:19-cv-1567 (D.S.C. May 30, 2019) (related case). On May 8, 2020, the South Carolina district court denied HHS's motion to dismiss in *Rogers*, allowing the Establishment Clause and Equal Protection Clause claims to proceed. *See* Order at 37-38, ECF No. 81, *Rogers v. HHS*, No. 6:19-cv-1567. Prior to bringing this suit, Texas asked HHS to either rescind Section 75.300 or exempt Texas from its requirements; it received no response. *See* ECF No. 1 ¶ 101; ECF No. 15-1 Ex. K (Texas letter).

**Factual and Procedural Background Subsequent to Suit:** After ten and a half months passed with no response to Texas' letter, Plaintiffs filed this suit on October 31, 2019. ECF No. 1. HHS thereafter issued a Notice of Proposed Rulemaking that proposed to replace the language in Section 75.300 under challenge. The proposed rulemaking specified that its alternative language "should be properly viewed as a proposal" only, and that it welcomed comments on the costs and benefits of "fully enforc[ing]" Section 75.300 as currently written. *Office of the Assistant Secretary for Financial Resources; Health and Human Services Grants Regulation*, 84 Fed. Reg. 63,831, 63,832, 63,834 (Nov. 19, 2019). It also stressed that the rulemaking "does not mean that [Section 75.300] has been repealed or replaced. The Final Rule still appears in the Code of Federal Regulations." 84 Fed. Reg. at 63,832. HHS also issued a Notice of Non-Enforcement, which stated that Section 75.300 would temporarily not be enforced "pending repromulgation." *Notification of Non-Enforcement of Health and Human Services Grant Regulation*, 84 Fed. Reg. 63,809, 63,810 (Nov. 19, 2019). That notice did not address or preclude future enforcement based on current violations. And even this limited notice is already being

challenged in federal court. *See* Corrected Complaint at 1, ECF No. 23, *Family Equality v. Azar*, No. 1:20-cv-02403 (S.D.N.Y. April 2, 2020) (challenging the notice of non-enforcement under the APA on several theories).

Plaintiffs requested leave to file a motion for partial summary judgment on December 18, 2019. ECF No. 11. Plaintiffs filed their joint motion for partial summary judgment on January 30, 2020. ECF No. 15 (motion); ECF No. 12 (order granting leave and granting Defendants a response deadline of 21 days after their complaint response was due). On the day Defendants' Answer was due, Defendants instead sought leave to file a motion to dismiss, which was granted. ECF No. 19 (request), ECF No. 21 (order). Defendants then filed their motion to dismiss on February 24, followed by a motion to extend their deadline to respond to the motion for summary judgment until after the disposition of this motion; the extension was granted at a March 2 hearing. ECF No. 22, 23.

On March 5, 2020, HHS's Office for Civil Rights sent Texas a letter conceding that application of Section 75.300 against Plaintiffs would violate RFRA. *See* ECF No. 30-1 ("Texas letter"). This letter did not grant Texas the same formal exemption provided to South Carolina, nor have Defendants been willing to clarify the meaning of this letter in subsequent discussions. *See infra* Part III.

## SUMMARY OF THE ARGUMENT

Defendants' request to dismiss this case as moot turns solely on a revocable notice of temporary non-enforcement and a "proposal" for a new regulation on which it has invited comments. These half-measures do not—indeed, they *cannot*—alter existing federal law. Therefore, according to Defendants, Plaintiffs' desired course of action would still violate a

federal regulation (Section 75.300). And Defendants' documents confirm the ongoing harm to Plaintiffs. Defendants' proposal for a new rule stresses that the challenged regulation has not been repealed, continues to govern Plaintiffs' conduct, and is not certain to be repealed. Defendants' non-enforcement notice states that it is time-limited, and neither disclaims future enforcement—against current or future conduct—nor the authority to rescind its notice. These actions do not resolve the wrongful chilling effect this still-effective regulation has on the State of Texas or the Archdiocese of Galveston-Houston, much less make it "absolutely clear" that the wrongful regulation will not "recur." *McKinley*, 643 F.3d at 406 (citation omitted). Defendants maintain the position that Plaintiffs' proposed conduct violates an on-the-books regulation, and Defendants could enforce Section 75.300 at any time, including upon a political change, or upon a court's injunction of an attempted repeal.

Defendants' brief alternative argument that Plaintiffs *never* had standing is readily dismissed. Texas faces crippling financial penalties to its foster care system if HHS were to enforce (or be compelled by a court to enforce) Section 75.300, and the Archdiocese of Galveston-Houston is directly chilled from expending resources on a prospective program in an area where they have already done good work motivated by their sincere faith. Defendants previously refused, in federal court, to deny that a state was at "risk" of losing all its foster care funding for permitting a Catholic agency with the same religious constraints as the Archdiocese into its program. *Buck*, 2019 WL 4686425, at *14. Defendants further recognized the significance of the prior status quo by granting South Carolina (but not Texas) a limited regulatory exemption in response to an enforcement concern, and by issuing non-enforcement and proposed rulemaking notices specifically in response to complaints about potential

8

enforcement. And Defendants' passing jibes at the Archdiocese's standing ignore the "material allegations" in Plaintiffs' complaint that are "accept[ed] as true" for a motion to dismiss. *Ass'n of Am. Physicians & Surgeons*, 627 F.3d at 550 (citation omitted).

## ARGUMENT

### I. This lawsuit is not moot.

A claim becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 365 (5th Cir. 2003) (quoting *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999)). Conversely, "as long as there is some interest in the outcome for which effective relief is available, the case is not moot." *Id.* And even where wrongful behavior has ceased entirely, a defendant asserting mootness must demonstrate it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189. This standard applies equally to government defendants. *See EEOC*, 933 F.3d at 449 (quoting and applying the "absolutely clear" standard to federal government); *McKinley*, 643 F.3d at 406 (applying standard to defendant State of Texas). The only "lighter burden" enjoyed by sovereign governments in the Fifth Circuit is that they are afforded a "presumption of good faith" when they have *actually repealed* a challenged policy. *Stauffer v. Gearhart*, 741 F.3d 574, 581-82 (5th Cir. 2014) (challenged rule already "replaced" that all agreed did not "violate [Plaintiff's]—or anyone else's—rights") (citations omitted). As described further below, the Fifth Circuit has also, once, extended this presumption to a government defendant's new conclusion that a challenged rule "does not apply to Plaintiff's desired activity" once the activity was "explicitly spelled out." *Moore*, 868 F.3d at 407. Because Defendants take the position that the regulation at issue *does* apply to

Plaintiffs' proposed conduct, *Moore* is inapplicable. Rather, the proper analysis is the "absolutely clear" standard set forth in *Texas v. EEOC* and *McKinley*. Defendants cannot meet it.

Simply stating the mootness standard demonstrates its inapplicability to a challenged law still on the books and still working an injury to Plaintiffs. Despite this clear law, Defendants argue that this lawsuit is moot solely because they have issued a notice of temporary non-enforcement—revocable at any time—and a "proposed" new regulation which (1) may or may not become final time during the next few years and (2) may or may not address Plaintiffs' situation.[2] *See* Mot. to Dismiss, ECF No. 22 at 7 ("HHS's Nonenforcement Notification has mooted the claims raised in the Complaint, which deprives the Court of jurisdiction."), *id.* at 10 (the "promise [of non-enforcement] and proposed amendment" makes challenge moot).

These statements are not even the regulatory equivalent of "the check is in the mail"—they are more akin to "I am considering whether to write you a check after I hear others' views and even then I am still not sure when or whether I will send it." By their nature, such temporary promises and proposals cannot change existing federal law. They cannot possibly moot a challenge to a still-extant policy or practice, much less give Plaintiffs here any assurance they can move forward with ministries that Defendants still claim violate federal regulations, and will remain so unless and until Section 75.300 is in fact repealed. "[I]t would strain credulity to find that an agency action" that "declar[es] presumptively unlawful" certain conduct does

---

[2] Not to mention that final federal regulations frequently change from the form initially proposed. *See, e.g.*, *Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List* (USML), 85 Fed. Reg. 4136, 4159-64 (Jan. 23, 2020) (listing tens of changes made in response to individual comments).

not "constitute an injury-in-fact." *EEOC*, 933 F.3d at 448. For that reason, Plaintiffs retain a strong interest in all forms of "effective relief" available to the Court—including injunctive relief—that would establish the legality of Plaintiffs' proposed conduct and remove still-existing legal threats. *Karaha*, 335 F.3d at 365. The Fifth Circuit has made clear that a case is not moot where the "authority to enforce" a challenged rule remains despite a "change of position" as to the propriety of enforcement, and that the harm of looming enforcement authority "would be redressed" by an injunction. *EEOC*, 933 F.3d at 450.

Under any circumstances, it would be odd for the government to confidently assert *before* repeal of a challenged regulation that it has sufficiently "assure[d the] court of continued compliance" and given the court "no reason to doubt the assurance." ECF No. 22 at 8 (quoting *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 572 (5th Cir. 2018)). But the assertion of 'no reason to doubt the assurance' is particularly hollow where, as here, these particular documents leave nothing to chance, providing three express reservations that make it impossible for Defendants to satisfy their burden. And the APA itself requires the government to leave these doubts pending final rulemaking, since the agency "must consider and respond to significant comments." *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96 (2015); *see Pennzoil Co. v. FERC*, 645 F.2d 360, 371 (5th Cir. May 1981) (notice and comment requires "that the agency educate itself before adopting a final order").

**Nonenforcement is temporary.** First, the statement of nonenforcement announces only temporary nonenforcement, "pending repromulgation" of the regulation. *Notification of Non-Enforcement of Health and Human Services Grant Regulation*, 84 Fed. Reg. at 63,810. In setting a time limit, Defendants have expressly declined to commit to non-enforcement of any

11

repromulgated rule similar or identical to the current version—a far cry from committing, as in *Moore*, "to not prosecute" in perpetuity because the law simply did not apply to the clarified conduct. 868 F.3d at 407. The better analogy is to government defendants who voluntarily cease enforcing a law during a time when its continued validity may be in doubt—which black-letter law establishes does not moot a case absent a firmer commitment. *See, e.g., EEOC*, 933 F.3d at 448-49 (Challenge to guidance was not moot even where "current DOJ policy bar[red] it from enforcing the Guidance."); *Parents Involved in Community Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (Though city noted "that it has ceased using the [challenged] racial tiebreaker pending the outcome of this litigation," case was not moot where city defended law's legality and would not commit to making the change permanent.); *Pederson v. La. State Univ.*, 213 F.3d 858, 874 (5th Cir. 2000) (Title IX challenge against state university was not mooted by short-term compliance plan where defendants had "made no representation to this court that they are dedicated to ensuring equal opportunities and fair accommodation for both their female and male athletes in the long run.").

Defendants have also not disclaimed the federal government's authority to later impose penalties for violations of Section 75.300 during the non-enforcement period. It is well understood that in certain regulatory contexts, "petitioners' past" conduct "might be the basis for the imposition of penalties even if, in the future," because of an intervening rule change, "those [activities] will not" be unlawful. *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 610 (2013) (intervening EPA regulation did not moot case because plaintiffs' pre-change activities could still face penalties). Here, HHS possesses the authority to "impose additional specific award conditions as needed" when, *inter alia*, "an applicant or recipient has a history of failure to

12

comply with the general or specific terms and conditions of a Federal award." 45 C.F.R. § 75.207(a)(2); *see also id.* § 75.205(c)(3) (authorizing HHS to review a grant applicant's prior "conformance to the terms and conditions of previous Federal awards" when assessing the "risk posed by applicants"). The new rule—even if it looks exactly like the NPRM proposal—does not remove the ability of a future HHS to penalize the Texas plaintiffs for violating the rule as it is written *today*. Only a judicial ruling establishing the current rule's unlawfulness prohibits that result. *Cf. De Niz Robles v. Lynch*, 803 F.3d 1165, 1170-73 (10th Cir. 2015) (Gorsuch, J.) (explaining that judicial action, unlike regulatory action, is presumptively retrospective as it declares what the law has always been, while regulatory action is presumptively prospective because it declares what policies should be).

When Defendants previously sought to avoid injunctive relief against Section 75.300 by asserting no possibility of enforcement—even before this notice of non-enforcement—the Western District of Michigan rejected the argument, noting that "[g]overnment officials can change their minds, re-interpret laws already on the books, and disrupt established practices." *Buck*, 2019 WL 4686425, at *13. Likewise here, the notice of non-enforcement does nothing to tie Defendants' hands with regard to penalizing action—even for conduct engaged in today. Further confirming the uncertain status of Defendants' actions, the notice of non-enforcement has been challenged as unlawful agency action under the APA in federal court. *Supra* 6-7. This ongoing uncertainty—including the real possibility that Defendants' allegedly remedial actions will be enjoined nationwide—confirms Plaintiffs' need for a judicial, legally-binding, order holding that their actions are lawful.

**Defendants have not changed the law—or even their interpretation of it.** Second, the notice of proposed rulemaking states that "merely because a regulation is not being enforced does not mean that it has been repealed or replaced. The Final Rule still appears in the Code of Federal Regulations." 84 Fed. Reg. at 63,832. The notice therefore emphasizes that the challenged rule remains the law—and Defendants have already acknowledged in their Case Management Plan that governmental entities "can almost *always* change [their] position on whether to enforce a law or regulation." ECF No. 27 at 4-5 n.1 (quoting Fed. Defs.' Reply Br. at 4, *Buck*, No. 1:19-cv-00286-RJJ-PJG (W.D. Mich. Aug. 20, 2019), ECF No. 61). Even if the federal government held to its non-enforcement policy pending repromulgation, acts taken contrary to the rule would still, under Defendants' stated view, be illegal under the existing regulation.

That reality brings with it a host of consequences. As already stated, taking action that violates the government's interpretation of Section 75.300 entails the continued prospect of future enforcement actions following repromulgation (even if Section 75.300 is changed). This is sufficient to chill any partnership between the State of Texas and the Archdiocese, especially given the problems inherent in expending resources on a program that would no longer be viable should HHS enforce Section 75.300. But even absent the prospect of future enforcement, there are significant barriers to the Archdiocese taking the necessary administrative steps to fully explore and shape a significant charitable commitment. The Archdiocese, and any similar religious organization seeking to partner with the State of Texas, would be in the position of contacting potential donors and potentially seeking loans for a course of conduct that the government has determined violates a federal regulation—a fact it

would be ethically obligated to disclose. The Archdiocese would need to retain consultants and lawyers to advise on a course of conduct despite that legal determination, raising potential concerns for those professionals' own ethical obligations. And it would have to seek state and local certifications and approvals for any program close to finalization, raising hard questions for these government actors as to what programs they may approve while Section 75.300 is on the books. All of these uncertainties disappear with a clear judicial ruling that Section 75.300 is invalid.

The Fifth Circuit has held that a law or agency action which declares specific conduct "unlawful" creates pressure that naturally "require[s] action immediately enough to constitute an injury-in-fact." *EEOC*, 933 F.3d at 448-50 (finding "pressure on Texas to change its laws" in light of the "prosecutorial power" of the Attorney General to enforce challenged guidance, and that the case was not mooted by a "recent change of position" on the guidance). And the Fifth Circuit has held that individuals who bought health insurance because "the individual mandate [of the Affordable Care Act] targets as 'unlawful' the decision to go without health insurance" have standing to challenge the mandate—even though "the enforcement mechanism [was] removed" by *law*, not mere agency action. *Texas v. United States*, 945 F.3d 355, 381 (5th Cir. 2019), *cert. granted*, 140 S. Ct. 1262 (U.S. Mar. 2, 2020) (No. 19-1019). Here, where even *less* protection from future enforcement is available, it is plain that the continued position that Plaintiffs' proposed conduct violates federal law (Section 75.300)—and its natural chilling effect on their current choices—suffices to defeat mootness.

**Defendants have not committed to a change.** Third, the notice of proposed rulemaking emphasizes that repeal of the old rule is not certain; it states that "this NPRM should be

properly viewed as a proposal," and solicits comments on the proposal, including on the benefits and detriments "were the previous Final rule to be fully enforced, as well as whether HHS were to fully exercise its enforcement discretion regarding the Final Rule." 84 Fed. Reg. at 63,832, 63,834. Any guarantee of change would suggest that the agency had no intention of providing the "full and fair hearing" due the comments it is soliciting under the Administrative Procedure Act. *Advocates for Highway & Auto Safety v. Fed. Highway Comm'n*, 28 F.3d 1288, 1292 (D.C. Cir. 1994); *see also United States v. Johnson*, 632 F.3d 912, 929 (5th Cir. 2011) (comment process in APA designed to ensure "real consideration to alternative ideas") (quoting *U.S. Steel Corp. v. U.S. E.P.A.*, 595 F.2d 207, 214 (5th Cir. 1979)). There is therefore a real risk— sufficient to chill Plaintiffs' desired course of action—that Defendants will enforce this rule. *See Porter v. Clarke*, 852 F.3d 358, 364-65 (4th Cir. 2017) (explaining "when the defendant 'retains the authority and capacity to repeat an alleged harm,'" including a government's ability to "reassess . . . at any time" the policy change at issue "and revert to the challenged policy," the burden of showing that the allegedly wrongful behavior will not occur again has not been met) (citation omitted); *see also id.* at 365 ("More significantly, throughout the course of this litigation, Defendants have refused to commit to keep the revised policies in place and not revert to the challenged practices.").

Accordingly, this is not an issue of Defendants' good faith, presumed or otherwise, and whether they should be assumed to keep their firm commitments. A promise of temporary nonenforcement, reserving all rights, followed by uncertainty, does not actually change the legal relationship between the parties, much less the law itself.

That is particularly so where repeal is not wholly within the current Defendants' control. As noted, this administration or a future administration could change its position on enforcement, including enforcement tied to actions during a nonenforcement period. But even apart from the executive branch's decisions, any rule change would be subject to court injunction. Many high-profile rules—including rules that repealed or granted an exemption from past government mandates—have been preliminarily enjoined or set aside by the federal courts during the current Administration. *See, e.g.*, *Pennsylvania v. Trump*, 351 F. Supp. 3d 791, 797 (E.D. Pa. 2019) (contraceptive mandate exemptions), *aff'd*, 930 F.3d 543 (3d Cir. 2019), *cert. granted*, 140 S. Ct. 918 (U.S. Jan. 17, 2020) (No. 19-431); *New York v. U.S. Dep't of Health & Human Servs.*, 414 F. Supp. 3d 475 (S.D.N.Y. 2019) (healthcare conscience rule including exemptions), *appeal docketed*,  No. 20-41 (2d Cir. Jan. 3, 2020); *see also Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 599-601 (Jan. 27, 2020) (Gorsuch, J., concurring) (observing "[t]he rise of nationwide injunctions" as causing "chaos" for the government, where "[i]f a single successful challenge is enough to stay the challenged rule across the country, the government's hope of implementing any new policy could face the long odds of a straight sweep" across parallel federal court challenges).

This concern is particularly potent where litigation has already been initiated to constrain HHS's attempts to depart even slightly from the policy embedded in Section 75.300. Since the beginning of this litigation, HHS has found itself defending two suits by private plaintiffs demanding that HHS enforce Section 75.300 in South Carolina despite the waiver it extended. And just recently, the United States District Court for South Carolina denied HHS's motion to dismiss in one of these cases. *Rogers v. HHS*, No. 6:19-cv-1567 (D.S.C. May 30, 2019) (same-

sex couple) (motion to dismiss denied, proceeding to the merits); *see Maddonna v. HHS*, No. 6:19-cv-3551 (D.S.C. Dec. 20, 2019) (motion to dismiss fully briefed). Further, litigation over HHS's notice of nonenforcement threatens HHS's ability to provide even limited, temporary reprieve to Plaintiffs—certainly undermining Defendants' claim that its notice of nonenforcement removes the impending threat of future injury. *See* Corrected Complaint at 1, *Family Equality v. Azar*, No. 1:20-cv-02403 (S.D.N.Y. Apr. 2, 2020), ECF No. 23.

Nor are these the only legal challenges Defendants face. In another similar case, Defendants have been sued by a same-sex couple seeking "a permanent injunction prohibiting [Defendants] from enabling, sanctioning, ratifying, or failing to implement adequate safeguards against the use of religious or other criteria to exclude foster or adoptive parent applicants based on their sexual orientation or sex or the same-sex character of their marriage in the administration of" related foster care programs. First Amended Complaint at 24, *Marouf v. Azar*, No. 1:18-cv-378 (D.D.C. Mar. 22, 2018), ECF No. 21. Those plaintiffs rely in part on Section 75.300. *See id.* at 12-13. That case is also still pending.[3] Given the chessboard of litigation Defendants face (on top of the possibility that the government could simply change its mind), the government's claim that its post-filing maneuvering has mooted this case is implausible. If anything, these developments make the need for relief *more* urgent and make the threat of court-ordered enforcement *more* substantial.

---

[3] There is a similar situation in *Dumont v. Lyon*, where a same-sex couple seeks to compel (through a settlement agreement) the Michigan Department of Health and Human Services to enforce its own policy against a Catholic foster care and adoption agency. Mot. to Reopen Case at 16, *Dumont v. Lyon*, No. 2:17-cv-13080 (E.D. Mich. Feb 24, 2020), ECF No. 87 (seeking to have the Court "order the State Defendants" to "terminate . . . [c]ontracts" with a Catholic foster care agency unable to certify same-sex couples).

Defendants' invocation of *Moore*, 868 F.3d 398, is inapt. In *Moore*, the defendants took the position that the challenged rule *did not apply* to the plaintiff, meaning no true dispute existed. *Id.* at 406-07. The Fifth Circuit characterized the government as "realiz[ing] the error of their ways" once plaintiff's proposed conduct was "explicitly spelled out," and committing firmly to an interpretation of its law that did not reach the plaintiff—meaning the "statement of non-enforcement" just reflected the actual scope of the law. *Id.* at 407. Defendants have not made any similar concession, or even suggested that the regulation (which "still appears in the Code of Federal Regulations" and has not "been repealed or replaced") does not reach Plaintiffs. 84 Fed. Reg. at 63,832. They point only to an ongoing proposal that is subject to judicial review under the Administrative Procedure Act—a circumstance for which there was no analogue in *Moore*—and temporary nonenforcement while the proposal is considered, with no assurances regarding future enforcement. "Thinking it over" is not enough to end the live controversy.

## II. Plaintiffs had standing when their complaint was filed.

Defendants alternatively argue that Plaintiffs lack standing because their injuries are too "speculative." ECF No. 22 at 10-11. While an injury must be "actual or imminent" to satisfy Article III, *Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 517 (5th Cir. 2014), "[a]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 267 (5th Cir. 2015) (pre-enforcement challenge) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Indeed, where there is substantial risk of future enforcement there is standing, even absent past enforcement. *Id.* at 158-59 ("When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action

is not a prerequisite to challenging the law."); *Steffel v. Thompson,* 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."); *see also MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat."). The Fifth Circuit has even held that the federal government "not attempt[ing] to enforce" a rule and adopting a "policy [that] bars it from enforcing" that rule would "not deprive [a plaintiff] of standing" where the "power to bring enforcement actions" remains. *EEOC,* 933 F.3d at 448-49.

Moreover, "standing is assessed as of the date on which suit was filed," and the complaint contains ample allegations of injury as of October 31, 2019. *Id.* at 449; ECF No. 1 ¶¶ 49, 104-05, 164-66 (alleging deterrent effect on Texas and Archdiocese). Defendants themselves acknowledge that "[t]he existence of these complaints and legal actions [against Section 75.300] indicates that § 75.300(c) and (d) imposed regulatory burden and created a lack of predictability and stability for the Department and stakeholders with respect to these provisions' viability and enforcement." 84 Fed. Reg. at 63,832; quoted in ECF No. 22 at 4. Defendants thus acknowledge that the regulation created a credible threat of enforcement and the detrimental uncertainty Plaintiffs complain of.

Indeed, Defendants' grant of an exception for all of South Carolina confirms the credible threat. ECF No. 22 at 4. Had there been no risk of enforcement, such a blanket exemption would have been unnecessary. And surely it would also have been unnecessary for HHS to warn South Carolina "that this exception does not relieve the SC Foster Care Program of its

obligation to comply with any other requirements of 45 CFR Part 75.300(c), [and] of other paragraphs of 45 CFR Part 75.300" if it never had any intent of enforcing the other parts of 45 C.F.R. § 75.300(c)-(d). ECF No. 15-1 Ex. G, Add. 56 (exception letter). By issuing a formal notice of non-enforcement and proposal for a new rule "[i]n light of [] complaints," Defendants admitted that reasonable concerns about enforcement existed. ECF No. 22 at 4.

Similarly, in Michigan federal court, Defendants admitted that "the government can almost *always* change its position on whether to enforce a law or regulation." *Buck*, 2019 WL 4686425, at *13-*14 (noting HHS's admission on this point)[4]; *see id.* (also stating that "[g]overnment officials can change their minds, reinterpret laws already on the books, and disrupt established practices"). And the court in *Buck* noted that "[t]he federal government has not denied [the] risk" that Michigan "will lose all federal funding for foster and adoption services if the federal government enforces § 45 C.F.R. 75.300(c)." *Id.* at *14.

All of this shows a "substantial risk" of harm through enforcement. *Contender Farms*, 779 F.3d at 267 (citation omitted). That is enough to satisfy Texas' Article III standing burden. Texas receives significant federal Title IV-E funding to support its foster care programs. ECF No. 1 ¶ 30; *see also* ECF No. 15-1 at 3. Were HHS to enforce Section 75.300 against Texas, this funding could be lost. ECF No. 1 ¶ 30. And, as HHS admits, "requiring grantees or subgrantees to comply with § 75.300(c)-(d) over religious objections would likely reduce the effectiveness of [government-funded foster care] programs." ECF No. 22 at 4 (internal quotation marks and citation omitted). The substantial risk that Section 75.300 would be

---

[4] As noted above, the government has again taken this position here. ECF No. 27 at 4-5 n.1.

enforced thus suffices to show standing. *See Stringer v. Whitley*, 942 F.3d 715, 720-21 (5th Cir. 2019).

Likewise, Section 75.300 and the threat of its enforcement has "deterred [the Archdiocese] from providing foster care services in partnership with the State of Texas." ECF No. 1 ¶¶ 49, 93-105. The Archdiocese also alleges that Section 75.300 imposes an unconstitutional burden on religious organizations seeking to provide foster care support services—particularly where, as here, engaging in foster care ministry is a classic religious exercise. ECF No. 1 ¶¶ 46-50, 159-194. And as HHS admits, enforcing Section 75.300 would reduce the number of faith-based foster care providers to the detriment of the foster care system. *See* ECF No. 22 at 4 ("the number of entities available to provide [foster care] services" would decrease if Section 75.300 were enforced).

Contrary to Defendants' assertion, ECF No. 22 at 11, the Archdiocese does not need to break the law in order to bring a challenge, as the chilling of its protected First Amendment conduct satisfies Article III when there is a substantial threat that the unconstitutional law could be enforced. *See Hous. Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 618-19 (5th Cir. 2007) ("Chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement."). And under *Texas v. EEOC* and *Texas v. United States*, a federal regulation causes harm where it reasonably alters plaintiffs' behavior to their detriment. *EEOC*, 933 F.3d at 447 (Federal law "pressur[ing]" State of Texas "to comply with" a policy, even where enforcement had been disclaimed, caused injury.).

Finally, Defendants' passing comment that Plaintiffs have not shown they are "otherwise qualified" to provide foster care services is also belied by the complaint, which alleges that the

Archdiocese is otherwise qualified to provide foster care services, noting that a ministry of the Archdiocese already had a license with the State. ECF No. 1 ¶ 47. And, prior to 2016, the Archdiocese in fact provided such services. ECF No. 15-1 Ex. B, ¶¶ 6-12; ECF No. 1 ¶ 47.

### III.     HHS's Texas letter does not change the Court's analysis.

As explained *supra* 7, on March 5, 2020, HHS's Office for Civil Rights (an office not named in this lawsuit) sent a letter to Texas stating its belief that application of Section 75.300(c)'s non-discrimination requirements regarding same-sex marriage status, sexual orientation, and gender identity to Plaintiffs would violate RFRA. ECF No. 30-1. Curiously, this letter differs in significant ways from the letter HHS sent to South Carolina. The South Carolina letter affirmatively invoked 45 C.F.R. § 75.102(b) to "hereby conditionally grant[] the requested exception" under HHS's regulatory authority. ECF No. 15-1 Ex. G, Add. 55. The Texas letter, however, stops short of granting such an exception and merely concludes that HHS's binding regulations would violate RFRA if enforced, ECF No. 30-1 at 4. The Texas letter does not take any steps to formally invoke HHS authority to exempt Plaintiffs from (what it now concedes are) HHS's unlawful regulatory requirements. Thus, instead of actually granting Plaintiffs the relief they seek, OCR's letter is best read as a concession by OCR (which is tasked with interpreting RFRA for HHS, ECF No. 15-1 Ex. G, Add. 55) that Plaintiffs' RFRA claim has merit. As part of the RFRA analysis, OCR noted that "other exceptions [from Section 75.300] are available" and cites HHS's "case-by-case exception[]" authority under § 75.102(b), confirming that it is not actually granting such an exception here. ECF No. 30-1 at 3 n.2. Confirming this disparity, the Texas letter claims only to speak for the Office for Civil Rights ("OCR has concluded . . . .") and is signed by the director of that office. *Id.* at 3, 4. The South

Carolina letter, however, is signed by the Principal Deputy Assistant Secretary for the Administration for Children and Families and appears to invoke his office's authority to grant a § 75.102(b) exception. ECF No. 15-1 Ex. G, Add. 55-56 ("[W]e have determined . . . .").

In light of the uncertainty created by this letter, Plaintiffs (with Defendants' consent) asked this Court on April 15, 2020, for additional time to discuss its meaning and potential implications. ECF No. 33. This Court granted that request. ECF No. 34. Accordingly, on April 22, Plaintiffs posed several questions to Defendants, including such basic queries as (1) who was bound by this letter (all of HHS or just the Office for Civil Rights?), (2) whether and how the letter could be revoked, and (3) whether the Office for Civil Rights (or HHS's lawyers at DOJ) could speak authoritatively for all Defendants on this issue. Despite numerous emails and a phone conversation to help Defendants better understand Plaintiffs' questions, Defendants ultimately refused to answer any questions at all. Rather, Defendants emailed on April 29, 2020 that the letter "speaks for itself with respect to all of your questions." During this Court's May 13, 2020 initial conference, Plaintiffs questioned whether Defendants intended to amend their pending motion to dismiss in light of this factual development (in another attempt to better understand the letter's meeting). Defendants responded that they had no plans to modify or amend their motion on these grounds, confirming that they would not be seeking dismissal based on the letter.

It is Plaintiffs' position that the Texas Letter does nothing more (and nothing less) than concede the merits of the Archdiocese's RFRA claim. Defendants acknowledge that they cannot lawfully enforce the challenged provisions of Section 75.300 against Plaintiffs without violating RFRA. *See* ECF No. 30-1. Yet Defendants stop there—they do not seek to invoke

their regulatory authority to remove the burden imposed by this unlawful regulation, nor do they make any further promises or guarantees with regard to how this legal analysis will practically impact Plaintiffs or HHS's enforcement of the regulation (nor could they given the pending litigation challenging both the South Carolina letter and the notice of nonenforcement, *supra* 17-18). And Defendants have acknowledged that they do not expect to seek dismissal based on the letter. *Cf.* Galveston District Court Rules of Practice, R.6 (requiring party to provide other side notice as to basis of motion to dismiss). The letter therefore does not change the facts on the ground and will be relevant only on the merits as Defendants' concession that Plaintiffs should succeed on their RFRA claim. As to the motion to dismiss, the letter does not change the operative facts established above, namely that (1) the offending regulation is *still* on the books, (2) Defendants *still* hold Plaintiffs' conduct to violate that regulation, and (3) Defendants offer only temporary, revocable, and incomplete statements about their current non-enforcement position.[5]

## CONCLUSION

The Court should deny the motion to dismiss.

---

[5] Given Plaintiffs' above understanding of the Texas letter and Defendants' unwillingness to clarify their position (perhaps itself an admission as to the letter's meaning), Plaintiffs here refrain from making further speculative arguments regarding the letter's impact on this litigation. However, should Defendants seek to later rely on the Texas letter in this litigation, Plaintiffs would request an opportunity to fully respond to any such arguments, including with appropriate briefing.

Dated: May 29, 2020

/s/ Eric C. Rassbach
ERIC C. RASSBACH
  Attorney-in-Charge
  Texas Bar No. 24013375
  S.D. Texas Bar No. 87245
MARK RIENZI
  S.D. Texas Bar No. 3517559
NICHOLAS REAVES
  S.D. Texas Bar No. 3498680
CHRISTOPHER PAGLIARELLA
  S.D. Texas Bar No. 3517558
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW
Suite 700
Washington, D.C. 20036
Phone: (202) 955-0095
Fax: (202) 955-0090
erassbach@becketlaw.org

*Attorneys for Plaintiff Archdiocese of
Galveston-Houston*

Respectfully submitted,

KEN PAXTON
  Attorney General of Texas
JEFFREY C. MATEER
  First Assistant Attorney General
RYAN L. BANGERT
  Deputy First Assistant Attorney General
DAVID J. HACKER
  Special Counsel to the Attorney General
PATRICK K. SWEETEN
  Associate Deputy Attorney General for
  Special Litigation

/s/ William T. Thompson
WILLIAM T. THOMPSON
  Special Counsel for Civil Litigation
  Attorney-in-Charge
  Texas Bar No. 24088531
  S.D. Texas Bar No. 3053077
Special Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548
Phone: (512) 936-2567
Fax: (512) 936-0545
Will.Thompson@oag.texas.gov

BENJAMIN S. WALTON
  Texas Bar No. 24075241
  Assistant Attorney General
General Litigation Division
P.O. Box 12548
Austin, Texas 78711
Phone: (512) 463-2120
Fax: (512) 320-0667
Benjamin.Walton@oag.texas.gov

*Attorneys for Plaintiffs State of Texas and Texas
Department of Family and Protective Services*

26

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2020, the foregoing document was served on all counsel of record via the Court's CM/ECF system.

/s/ William T. Thompson
WILLIAM T. THOMPSON