**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| STATE OF TEXAS,<br>TEXAS DEPARTMENT OF FAMILY<br>AND PROTECTIVE SERVICES, and<br>ARCHDIOCESE OF GALVESTON-<br>HOUSTON<br><br>        *Plaintiffs*,<br><br>v.<br><br>ALEX M. AZAR, II, *in his official*<br>*capacity as Secretary of Health and*<br>*Human Services*,<br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES,<br>and<br>UNITED STATES OF AMERICA,<br><br>        *Defendants*. | Civil Action No. 19-0365 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FOR
LACK OF JURISDICTION**

# **TABLE OF CONTENTS**

Statement of the Nature and Stage of the Proceeding ........................................................ 1

Statement of the Issues ..................................................................................................... 1

Argument .......................................................................................................................... 1

   I.   Plaintiffs' Challenge to a Rule that HHS Has Promised (Twice) Not to Enforce, Including against Plaintiffs Specifically, Is Moot. ........................................................ 2

      A.   When Arguing Mootness, the Government "Bears a Lighter Burden to Prove That Challenged Conduct Will Not Recur." ................................................................. 3

      B.   HHS Has Established through the Nonenforcement Notification and Texas Letter That Enforcement of § 75.300(c)–(d) Will Not Occur. ................................... 6

         1. Plaintiffs' Argument That the Nonenforcement Notification Is Temporary Applies an Incorrect Mootness Standard for Government Entities and Misrepresents the Strength of HHS's Commitment Not to Enforce § 75.300(c)–(d). .............................................................................................................................. 8

         2. Because Defendants Have Promised Not to Enforce § 75.300(c)–(d) and Are Currently Repromulgating § 75.300(c)–(d), There Need Not Be a Present Change in the Law. ....................................................................................................... 10

         3. HHS Has Committed Not to Enforce § 75.300(c)–(d) against Plaintiffs. ........ 12

   II.   Plaintiffs Lack Standing Because Their Asserted Injuries Are Speculative and No Enforcement Action Is Certainly Impending. ............................................................... 15

Conclusion ..................................................................................................................... 19

### STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

The following is the final brief concerning Defendants' motion to dismiss for lack of jurisdiction, ECF No. 22, which argued that (1) this challenge to 45 C.F.R. § 75.300(c)–(d) is moot in light of the Department of Health and Human Service's promise not to enforce that regulation and (2) Plaintiffs lack Article III standing. A hearing on the motion is scheduled to take place on June 30, 2020.

### STATEMENT OF THE ISSUES

Whether the Court has jurisdiction to review a challenge to a rule that the promulgating agency no longer enforces and is in the process of amending.

### ARGUMENT

Plaintiffs cannot take yes for an answer. They filed this lawsuit because of their concerns about 45 C.F.R. § 75.300(c)–(d), a regulation that prohibits certain forms of discrimination by recipients of federal funds and that requires recipients to "treat as valid the marriage of same-sex couples." HHS has some of the same concerns and, for that reason, has publicly promised not to enforce § 75.300(c)–(d) against any entities while it considers amendments to the regulation (the comment period closed on December 19, 2019, and HHS submitted a draft final rule to the Office of Management and Budget on May 26, 2019 for review pursuant to Executive Order 12,866).[1] Furthermore, since Defendants filed their motion to dismiss earlier this year, HHS issued a letter specifically to Texas, stating "that RFRA prohibits HHS from applying 45 C.F.R. § 75.300(c) and (d)

---

[1]   The status of that review can be found at the following URL: https://www.reginfo.gov/public/do/eom12866SearchResults?view=yes&pagenum=0.

against Texas with respect to the Archdiocese and other similarly situated entities." Letter from Roger T. Severino, Dir., HHS Office for Civil Rights, to Ken Paxton, Attorney Gen. of Tex. 1 (Mar. 5, 2020), ECF No. 30-1 [hereinafter Texas Letter]. The short of the matter is that the parties are in complete agreement that § 75.300(c)–(d) should not be enforced, and HHS has made clear, twice over, that it will not enforce § 75.300(c)–(d) against Plaintiffs and other similarly situated entities. Thus, there is nothing for the Court to resolve. There is no Article III case or controversy here. This case is moot.

Plaintiffs also lack Article III standing. Plaintiffs have pointed to zero allegations in their complaint that establish an *injury in fact* because of § 75.300(c)–(d). The regulation has never been enforced, and Plaintiffs have never explained why any enforcement against them is "*certainly* impending," a necessary showing for Article III standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565 n.2 (1992)).

For these two independent reasons, the Court should dismiss this case.

## I.     Plaintiffs' Challenge to a Rule that HHS Has Promised (Twice) Not to Enforce, Including against Plaintiffs Specifically, Is Moot.

Although Plaintiffs have never alleged an injury in fact, any arguable injury was extinguished when HHS published the Notification of Nonenforcement of Health and Human Services Grants Regulation, 84 Fed. Reg. 63,809, 63,811 (Nov. 19, 2019) [hereinafter Nonenforcement Notification]. Therein, HHS explained that it would not enforce § 75.300(c)–(d) and instead intended to amend the regulation to address the very concerns that Plaintiffs raise. Not only that, any arguable injury was *further* extinguished

when HHS concluded, in response to a request from Texas, that "RFRA prohibits HHS from applying 45 C.F.R. § 75.300(c) and (d) against Texas with respect to the Archdiocese and other similarly situated entities." Texas Letter 1.

Plaintiffs' insistence that this case presents a live controversy despite these events is incorrect for several reasons. First, they misstate the legal standard for mootness: government entities bear a "lighter burden to prove that the challenged conduct will not recur." *See Moore v. Brown*, 868 F.3d 398, 406–07 (5th Cir. 2017). Plaintiffs' attempt to cabin that standard to a small subset of cases in which the government actually repeals a policy has no basis in, and in fact is inconsistent with, binding precedent. Second, given HHS's promises not to enforce § 75.300(c)–(d), Plaintiffs face no credible threat of enforcement (or indeed *any* threat of enforcement).

## A. When Arguing Mootness, the Government "Bears a Lighter Burden to Prove That Challenged Conduct Will Not Recur."

As Defendants explained in their opening brief, the government bears a lighter burden than private parties to demonstrate mootness. *See* Defs.' Mot. Dismiss 8, ECF No. 22. Plaintiffs appear to take issue with the breath of this standard, arguing that the government's lighter burden in demonstrating mootness is limited to cases where the government *repeals* a policy. *See* Pl.'s Opp'n 9, ECF No. 37. However, the Fifth Circuit has not taken such a narrow view, as evidenced by its categorical distinction between private and government entities in this context: "A defendant making . . . a claim of mootness 'bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.' A government entity,

however, bears a lighter burden to prove that challenged conduct will not recur." *Moore*, 868 F.3d at 406–07 (quoting *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015)).

As the text of that standard makes clear, the Fifth Circuit has not held that this distinction exists only when the government repeals a policy. In fact, in *Moore* itself, the court held that the plaintiff's challenge was moot because (as here) the government decided not to *enforce* the policy, not because the government decided to *repeal* the policy. *See id.* at 407 ("The Defendants' promise to not prosecute Moore for his one-on-one and small group communication is therefore sufficient to meet Defendants' 'lighter' burden to prove that the challenged conduct will not recur.").

Plaintiffs' proposed narrowed standard also cannot be squared with the reason for the distinction between government entities and private parties. Government entities bear a lighter burden to demonstrate mootness "because 'Government actors in their sovereign capacity and in exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties.'" *Id.* (quoting *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009)). Whether the government has repealed a policy or decided not to enforce it, courts are to assume that the government means what it says and is not making statements to evade judicial review.

Plaintiffs' further claim that the government must make "absolutely clear" that the challenged conduct will not recur, *see* Pls.' Opp'n 9–10, is beside the point. The question is not whether it is "clear" that the challenged conduct will not recur. Rather, the question is how much *proof* is necessary to make that showing. The Fifth Circuit has explained that the government bears a "lighter burden" to come forth with such proof, holding that the

government is "not required" to demonstrate that it is "physical[ly] or logical[ly] impossib[le]" for "the challenged policy [to] be reenacted absent evidence that the voluntary cessation is a sham for continuing possibly unlawful conduct." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009).

The case that Plaintiffs cite for the contrary proposition, *see* Pls.' Opp'n 9 (citing *McKinley v. Abbott*, 643 F.3d 403 (5th Cir. 2011)), in fact *applies* the "lighter burden" articulated in *Moore*, *Sossamon*, and other cases. In *McKinley*, the court held that the plaintiff's challenge to a government policy was moot because the Texas Attorney General "declared that neither he nor any county or district attorney . . . will attempt to enforce [the challenged statute]" and because the court had "no reason to doubt his statement." *McKinley*, 643 F.3d at 407. This is the same standard articulated in *Moore*: the government made "absolutely clear" that it would not enforce the challenged policy, and because the government bears a "lighter burden" in making that showing, a nonenforcement statement was sufficient to moot the case.[2]

In sum, the Fifth Circuit has held that under a government's "lighter burden" to demonstrate mootness, a statement of nonenforcement is sufficient to moot a challenge to a law or policy. This is the standard that the Court should apply to this case.[3]

---

[2] *Texas v. EEOC*, 933 F.3d 433 (5th Cir. 2019), is not to the contrary either. There, the court held that the state's challenge was not moot because there was "no direct evidence" that the government would not enforce the challenged policy, *see id.* at 449–50, in contrast to the express nonenforcement promises in *Moore*, *McKinley*, and here.

[3] Plaintiffs do not appear to argue that there is a live case or controversy under the Fifth Circuit's "lighter burden" standard for government entities. Rather, their focus appears to be on the standard applied to private entities.

**B.      HHS Has Established through the Nonenforcement Notification and Texas Letter That Enforcement of § 75.300(c)–(d) Will Not Occur.**

HHS has more than met its burden to demonstrate that this case is moot. As explained in Defendants' opening motion, *see* Defs.' Mot. Dismiss 9–10, Plaintiffs are at no risk of enforcement of § 75.300(c)–(d). HHS has formally and publicly announced in the Federal Register that "the regulatory actions, promulgated through the December 12, 2016 final rules, 81 FR 89393, namely, the additions of . . . 75.300(c) and (d), . . . will not be enforced pending repromulgation." Nonenforcement Notification, 84 Fed. Reg. at 63,811. Furthermore, the amendments to the regulation that HHS has proposed would address Plaintiffs' concerns. *See* Defs.' Mot. Dismiss 2–4 (comparing the current and proposed rules and explaining that the proposed changes arose from some of the same legal concerns that Plaintiffs raise); *see also* Health and Human Services Grants Regulation, 84 Fed. Reg. 63,831 (proposed Nov. 19, 2019).

Indeed, Plaintiffs appear to concede that the proposed rule, if adopted, would address their concerns; their only apparent concern is that Defendants might someday apply the current version of § 75.300(c)–(d) to conduct taken in reliance on the promise of nonenforcement. *See* Pls.' Opp'n 13. This concern is speculation piled on speculation. First, Plaintiffs speculate that HHS will keep the current version of the regulation, contrary to what it has proposed. Second, they speculate that HHS would renege on its two promises not to enforce § 75.300(c)–(d). Not only is this complete speculation, but it is also precisely the bad faith inference that is forbidden in assessing mootness. *See Moore*, 868 F.3d at 407.

Plaintiffs argue that the Texas Letter is "relevant only on the merits as Defendants'

concession that Plaintiffs should succeed on their RFRA claim." Pls.' Opp'n 25. However, Plaintiffs cannot have it both ways. They offer no reason why this Court should ignore the letter for purposes of jurisdiction but nevertheless rely on the letter to adjudicate the merits of this case. It is also immaterial that the letter, which was issued after Defendants filed their motion to dismiss, was not included in the motion to dismiss. Courts have a duty at all stages of litigation to assure themselves of jurisdiction. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998). To do this, they may rely on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). There is no dispute as to the existence of the Texas Letter. Accordingly, the Court may consider the letter to determine whether it has jurisdiction.

The Court should also reject Plaintiffs' request to file a sur-reply regarding the letter. Plaintiffs cannot claim to lack notice of the letter: Plaintiffs filed the letter with the Court on March 11, 2020, before they filed their opposition brief. *See* Texas Letter. Plaintiffs also affirmatively raised the letter in this briefing. *See* Pls.' Opp'n 23–25. And, of course, HHS wrote the letter because Texas requested an exception in the first place. *See* Texas Letter 1–2 (describing Texas's requests to HHS).



Despite clear proof that Plaintiffs are under no threat of enforcement, they raise three counterarguments against mootness, *See* Pls.' Opp'n 11–19, which are addressed in turn below.

1. **Plaintiffs' Argument That the Nonenforcement Notification Is Temporary Applies an Incorrect Mootness Standard for Government Entities and Misrepresents the Strength of HHS's Commitment Not to Enforce § 75.300(c)–(d).**

First, Plaintiffs argue that because the Nonenforcement Notification applies only pending repromulgation of the challenged rule, it cannot moot the case. *See id.* at 11–13. The premise of this argument—that the government must show that the challenged policy will *under no circumstances* apply to Plaintiffs again—is incorrect. In fact, courts do "not require some physical or logical impossibility that the challenged policy will be reenacted" in order to conclude that a case is moot "absent evidence that the voluntary cessation is a sham for continuing possibly unlawful conduct." *Sossamon*, 560 F.3d at 325.

The Fifth Circuit has actually rejected the precise argument that Plaintiffs raise here. In *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014), the plaintiff challenged a provision of the Texas Department of Criminal Justice's Sex Offender Treatment program that the state amended after the complaint was filed. The plaintiff "argue[d] that nothing indicate[d] that [the] change in policy [was] permanent, and that his claims therefore qualif[ied] for an exception to the mootness doctrine." *Id.* at 582. The court rejected that argument, observing that while "in an ordinary case, 'subsequent events' would have to make it 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," the plaintiff's argument "ignores the 'lighter burden' that government entities bear in proving that the challenged conduct will not recur once the suit is dismissed as moot." *Id.* (quoting *Sossamon*, 560 F.3d at 325). The court thus stated that, "[w]ithout evidence to the contrary," it would not assume that the government was "not following its

8

own [revised] policy as written." *Id.* And because the plaintiff had not presented any evidence to show that the government would return to enforcing the prior policy, his argument that the government could at some point in the future reverse course was "too speculative to avoid mooting the case." *Id.* (quoting *Sossamon*, 560 F.3d at 325).

As in *Stauffer*, the Court must presume here that HHS will follow its own nonenforcement policy as written. There is no evidence that HHS will enforce § 75.300(c)–(d) despite its commitment not to do so or that HHS's nonenforcement promises are "a sham for continuing possibly unlawful conduct," *Sossamon*, 560 F.3d at 325.

Plaintiffs also point to language in an out-of-circuit district court decision involving § 75.300(c)–(d) as evidence that HHS may reverse its nonenforcement decision. *See* Pls.' Opp'n 13 (citing *Buck v. Gordon*, 429 F. Supp. 3d 447, 465 (W.D. Mich. 2019). However, as Defendants explained in footnote 1 of the Case Management Plan, ECF No. 27, Plaintiffs take the quoted language ("Government officials can change their minds, re-interpret laws already on the books, and disrupt established practices") entirely out of context. HHS merely observed that because it is almost always possible for the government to change its position, the fact that the government may change its position is not enough to defeat mootness. HHS's full response was as true then as it is now: a plaintiff must make *some* showing that its "conduct has drawn enforcement actions or threats of enforcement in the past" because otherwise *every* pre-enforcement action would be ripe (which is not the case). Fed. Defs.' Reply Br. at 4, *Buck v. Gordon*, No. 1:19-cv-00286-RJJ-PJG (W.D. Mich. Aug. 20, 2019), ECF No. 61. Plaintiffs' argument here, like that of the *Buck* plaintiffs, would render mootness and ripeness doctrine "virtually void," because "[a]

governmental entity can almost *always* change its position on whether to enforce a law or regulation in a particular context." *Id.*

Furthermore, as the Court pointed out at the March 2, 2020 status conference, *Buck* was decided before HHS issued its Nonenforcement Notification and NPRM. Those documents, along with the Texas Letter, definitively state HHS's position that it will not enforce § 75.300(c)–(d) pending repromulgation of the rule, that it proposes to remove the portions of § 75.300(c)–(d) that Plaintiffs challenge, and that in any event HHS will not enforce § 75.300(c)–(d) against Texas with respect to the Archdiocese and other similarly situated entities. *Buck* is simply inapposite.

### 2. Because Defendants Have Promised Not to Enforce § 75.300(c)–(d) and Are Currently Repromulgating § 75.300(c)–(d), There Need Not Be a Present Change in the Law.

Plaintiffs' next counterargument, that until there is a change in the law, the Archdiocese and similarly situated entities must spend resources to comply with § 75.300(c)–(d), *see* Pls.' Opp'n 14–15, is unavailing for similar reasons. Any plaintiff that challenges a law that is not being enforced could make that same claim. However, that argument cannot be squared with *Moore*, which held that a statement of nonenforcement is sufficient to moot a challenge to a law. *See Moore*, 868 F.3d at 406–07.

Plaintiffs' only response is that the *Moore* "defendants took the position that the challenged rule *did not apply* to the plaintiff," whereas "Defendants have not made any similar concession" here. *See* Pls.' Opp'n 19. This is a distinction without a difference. The key point in that case was that "[t]he Defendants' promise to not prosecute Moore for his one-on-one and small group communication is . . . sufficient to meet Defendants' 'lighter'

10

burden to prove that the challenged conduct will not recur." 868 F.3d at 407. *Why* the government decided not to prosecute (i.e., a legal decision that the ordinance did not apply to the plaintiff versus an exercise of the government's prosecutorial discretion) was irrelevant to the court's mootness analysis. Nor do Plaintiffs explain why that distinction should matter. In fact, even if it did, HHS has stated that "RFRA prohibits HHS from *applying* 45 C.F.R. § 75.300(c) and (d) against Texas with respect to the Archdiocese and other similarly situated entities." Texas Letter 1 (emphasis added).

In addition, Plaintiffs' chimerical resource-expenditure exception to mootness has no legal basis and is, in fact, inconsistent with decisional law. Were a plaintiff able to (re)create a live controversy by spending resources to prepare for a speculative future event, few cases would be moot. *Cf. Amnesty Int'l USA*, 568 U.S. at 416 (observing, in the context of Article III standing, that "respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). But that has never been the law. In *Stauffer*, for example, the plaintiff argued even in the face of a changed policy "that nothing indicates that [the] change . . . is permanent, and that his claims therefore qualify for an exception to the mootness doctrine." 741 F.3d at 582. However, the court rejected this argument, reasoning that the plaintiff "has not presented any evidence to suggest that [the government] is not following its own policy as written." *Id.*; *see also Moore*, 868 F.3d at 407 (rejecting the plaintiffs' arguments that the statement of nonenforcement was "litigation posturing"). Similarly here, Plaintiffs are free to be skeptical of HHS's numerous nonenforcement assurances and spend resources in response to that skepticism. Federal courts, by contrast,

are not entitled to such skepticism: they must accord government entities' statements of nonenforcement "a presumption of good faith because they are public servants, not self-interested private parties." *Moore*, 868 F.3d at 407 (quoting *Sossamon*, 560 F.3d at 325).

Plaintiffs' reliance on *Texas v. EEOC* and *Texas v. United States*, 945 F.3d 355 (5th Cir. 2019), *see* Pls.' Opp'n 15, gets them nowhere. Neither of those cases involved a statement (much less two) that the government would not enforce the challenged law. In *Texas v. EEOC*, the government did not even argue that the case was moot; the court simply observed that a "general memorandum" stating that "the Department [of Justice] may not use its enforcement authority to effectively convert agency guidance documents into binding rules" did not moot a challenge to an EEOC guidance document. 933 F.3d at 449–50. The court so held in light of the government's position "acknowledging that, to avoid liability, employers must meet one of the two safe harbors in the Guidance and that 'the Guidance is fairly encompassed by Title VII." *Id.* at 450. The same goes for *Texas v. United States*, in which the court explicitly distinguished its decision from cases where there was a record of nonenforcement and a "tacit agreement" not to enforce a law. 945 F.3d at 382 (citing *Poe v. Ullman*, 367 U.S. 497 (1961)). In sum, *Texas v. EEOC* and *Texas v. United States* do not bear on the question of whether a statement of nonenforcement moots a case.

### 3. HHS Has Committed Not to Enforce § 75.300(c)–(d) against Plaintiffs.

Plaintiffs' last counterargument, that Defendants have not committed to change § 75.300(c)–(d), *see* Pls.' Opp'n 15–19, is a restatement of their second counterargument, and is a red herring at any rate. Once again, Plaintiffs point to no decision that requires the

government to change the law in order to moot a challenge to it. In fact, *Moore* holds to the contrary. *See Moore*, 868 F.3d at 406–07.

The few points that Plaintiffs raise to question the durability of HHS's Nonenforcement Notification are speculative and, in any event, are not recognized exceptions to mootness doctrine. First, Plaintiffs argue that "this administration or a future administration could change its position on enforcement." *See* Pls.' Opp'n 17. Once again, if "the possibility of changing one's mind" were a valid exception to mootness, *Moore*, *Stauffer*, *Sossamon*, and every other mootness decision would have come out differently. Indeed, there would be no mootness doctrine as to government policies, because it is theoretically possible in every case for the government to change its position in the future. On the contrary, government officials are "accorded a presumption of good faith because they are public servants, not self-interested private parties, . . . [and thus, courts] assume that formally announced changes to official government policy are not mere litigation posturing." *Sossamon*, 560 F.3d at 325. The Court should give full effect to this presumption here, where Plaintiffs have offered no reason to doubt the government's commitment.

Similarly, Plaintiffs argue that this case is not moot because it is possible that a final rule could subsequently be enjoined in separate litigation. *See* Pls.' Opp'n 17–18. This is also speculation that proves too much. It is always possible for a court to invalidate government action that has mooted a prior case. But that has not stopped the Fifth Circuit from holding on numerous occasions that changes in government policy can moot a case. Furthermore, this is not the proper venue for Plaintiffs to defend any future rule. If the final

13

rule is challenged, Plaintiffs are free to participate in that litigation in support of the rule.

Plaintiffs claim that a purported "chessboard of [pending] litigation" increases the possibility of a court enjoining any new rule. But none of the pending cases challenge any new rule because HHS has not yet issued a final rule. The only cited case that has a remote connection to this case is *Family Equality v. Azar*, No. 20-cv-2403 (S.D.N.Y. filed Mar. 19, 2020), which involves a challenge to the Nonenforcement Notification. However, *Family Equality* is still in its early stages: HHS's response to the complaint is due on June 22, 2020, and the court has not issued any decisions concerning the merits of the plaintiffs' allegations. Moreover, *Family Equality* does not challenge the Texas Letter, which provides Plaintiffs in this case further protection against enforcement.

The other cases that Plaintiffs cite are even more unlikely to undermine HHS's commitments not to enforce § 75.300(c)–(d). *Rogers v. HHS*, No. 19-cv-1567 (D.S.C. filed May 30, 2019), and *Dumont v. Lyon*, 17-cv-13080 (E.D. Mich. filed Sept. 20, 2017), involve challenges to aspects of the foster care programs in South Carolina and Michigan respectively, not in Texas. In fact, HHS is not even a party in *Dumont*. And *Marouf v. Azar*, No. 18-cv-0378 (D.D.C. filed Feb. 20, 2018), involves the provision of foster care in an entirely different set of programs—those for Unaccompanied Refugee Minors and Unaccompanied Alien Children.



Plaintiffs' red herring arguments fail to rebut the Fifth Circuit's clear decision in *Moore*, which held that a government's statement of nonenforcement is sufficient to moot a challenge to a law. This case is moot.

## II.     Plaintiffs Lack Standing Because Their Asserted Injuries Are Speculative and No Enforcement Action Is Certainly Impending.

As Defendants explained in their opening motion, *see* Defs.' Mot. Dismiss 10–11, Plaintiffs have not plausibly alleged that an injury is "*certainly* impending," a requirement under Article III. *See Amnesty Int'l USA*, 568 U.S. at 409 (quoting *Defs. of Wildlife*, 504 U.S. at 565 n.2). The challenged provisions have never been enforced since they came into effect on January 11, 2017, and Plaintiffs do not claim otherwise. Moreover, the Complaint contains zero allegations to suggest than an enforcement action against Plaintiffs was certainly impending at the time this suit was filed.

In the twenty-five pages of Plaintiffs' opposition, they still have not articulated a concrete, actual, or imminent injury that existed at the time this suit was filed. Instead, Plaintiffs misconstrue language in the Nonenforcement Notification, NPRM, and other HHS statements—documents that, according to Plaintiffs, have no value in the mootness analysis—to suggest that HHS has made certain concessions regarding Plaintiffs' alleged injury. All of these statements are taken out of context and do not demonstrate any certainly impending injury.

For example, Plaintiffs point to language in the NPRM that acknowledges the regulatory burden that § 75.300(c)–(d) has imposed and language in a letter written to South Carolina that granted the state a conditional exception to § 75.300(c). *See* Pls.' Opp'n 20–21. These statements are *not* concessions that there is "a credible threat of enforcement," as Plaintiffs suggest. *See* Pls.' Opp'n 20. The government can believe that an individual's "mere 'interest in a problem,'" *Sierra Club v. Morton*, 405 U.S. 727, 739

15

(1972), merits amending a rule or granting exceptions to a rule, even if that interest does not amount to an Article III injury. The truth of the matter is that HHS agrees that the challenged regulation should be repromulgated and that certain exceptions to the current rule should be granted, while also disagreeing that Plaintiffs have suffered or articulated an Article III injury. The Court should allow HHS to complete its rulemaking process rather than issue an advisory opinion on the lawfulness of a rule that the agency has proposed to amend.

Plaintiffs also retread their argument about *Buck* and the government's ability to change its mind. *See* Pls.' Opp'n 21. As discussed above, Plaintiffs take this quote entirely out of context; HHS's point was and still is that some showing beyond the evergreen possibility of policy change is necessary to demonstrate an ongoing injury in fact.

In sum, Plaintiffs cannot rely on any of these statements from HHS to create an Article III injury. To be sure, HHS shares some of Plaintiffs' concerns with § 75.300(c)–(d) and thus has proposed to revise it. But because Plaintiffs have not articulated how they have been or will be injured by the regulation within the meaning of Article III, there is no case or controversy for this Court to resolve.

⁂

Although Plaintiffs focus most of their attention on statements from HHS, they make a few brief arguments to support their alleged Article III injury. All of these arguments can be readily dismissed.

Texas argues that it has in fact suffered an Article III injury, stating, "Were HHS to enforce Section 75.300 against Texas, [its federal] funding could be lost." *See* Pls.' Opp'n

16

21. The subjunctive "were" says it all. Texas has not pointed to any allegations in the complaint to show that an enforcement action was certainly impending at the time this case was filed (or now). In fact, one would imagine that if Texas truly felt threatened by § 75.300(c)–(d), it would have raised concerns at an earlier date; HHS received no negative comments—from Plaintiffs or otherwise—when § 75.300(c)–(d) was proposed, *see* Health and Human Services Grants Regulation, 81 Fed. Reg. 89,393, 89,393 (Dec. 12, 2016), and Plaintiffs did not file this suit until nearly two years after the effective date of the rule. Other than speculate what *might* happen *if* HHS took enforcement action, Texas has not explained why it is injured at all.

The Archdiocese also claims that it has alleged an injury in fact. *See* Pls.' Opp'n 22–23. But as Defendants explained in their opening brief, *see* Defs.' Mot. Dismiss 11, the Archdiocese, which does not participate in Texas's foster care system, points to allegations that are even more speculative than the State's. The Archdiocese still has not pointed to any plausible allegation that it is otherwise qualified to provide foster care services. Instead, it points to a single allegation that "a ministry of the Archdiocese already *had* a license with the State," Pls.' Opp'n 23 (emphasis added) (citing Compl. ¶ 47, ECF No. 1), but does not allege when the Archdiocese last had a license or, more importantly, whether it is *currently* qualified for a license.

This timing is relevant for another reason: in its opposition, the Archdiocese observes that it last had a license sometime "prior to 2016," Pls.' Opp'n 23, which predates HHS's promulgation of the challenged rule. In other words, the Archdiocese admits that it stopped participating in the Texas foster care system *before* HHS even proposed the

17

challenged rule on July 13, 2016. Thus, the Archdiocese cannot allege that it withdrew from the program as a result of the rule. And, as referenced above, the Archdiocese did not participate in the comment period for § 75.300(c)–(d), *see* Health and Human Services Grants Regulation, 81 Fed. Reg. at 89,393 (observing that "HHS received twelve comments on [§ 75.300(c)–(d)], all of which were strongly supportive"), and waited almost two years after the rule's effective date to bring this lawsuit. For a complaint to survive a motion to dismiss, it must "'clearly . . . allege facts demonstrating' each element of standing." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Any other legal standard would permit any organization to challenge § 75.300(c)–(d), regardless of whether it actually qualified for federal funds or was injured by it. Because the Archdiocese has not alleged any factual matter that it is *currently* qualified to participate in Texas's foster care program or that it has been affected by § 75.300(c)–(d) at all, it has not alleged an injury in fact.

The Archdiocese's other argument, that it has experienced a "chilling of its protected First Amendment conduct," *see* Pls.' Opp'n 22, suffers from the same problem. There is no question that chilling speech can give rise to an injury in fact. But, as with all injuries, it is the plaintiff's burden to clearly allege enough factual matter to show that harm is certainly impending. As the Supreme Court has admonished on numerous occasions, plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending. . . . If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." *Amnesty Int'l*

*USA*, 568 U.S. at 416. The Archdiocese has not pointed to any allegations to clearly show that its speech has been chilled because of § 75.300(c)–(d). On the contrary, the Archdiocese stopped providing foster care service before HHS promulgated § 75.300(c)–(d). And, once again, there is nothing to suggest that HHS is likely to enforce § 75.300(c)–(d)—which has never been enforced at all—against Texas with respect to the Archdiocese. The complaint is simply devoid of allegations that support an injury in fact.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss.

Dated: June 19, 2020                    Respectfully submitted,


                                        JOSEPH H. HUNT
                                        Assistant Attorney General

                                        MICHELLE R. BENNETT
                                        Assistant Branch Director
                                        Civil Division

                                        *Benjamin Takemoto*
                                        BENJAMIN T. TAKEMOTO
                                        (DC Bar # 1045253)
                                        Trial Attorney (Attorney-in-Charge)
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        P.O. Box No. 883, Ben Franklin Station
                                        Washington, DC 20044
                                        Phone: (202) 532-4252
                                        Fax: (202) 616-8460
                                        E-mail: benjamin.takemoto@usdoj.gov

                                        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Plaintiffs'

counsel by the Electronic Case Filing system on June 19, 2020

*Benjamin Takemoto*
BENJAMIN T. TAKEMOTO