Case 3:19-cv-00365   Document 44   Filed on 08/05/20 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
August 05, 2020
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

No. 3:19-cv-00365

THE STATE OF TEXAS, TEXAS DEPARTMENT OF FAMILY & PROTECTIVE SERVICES, AND THE ARCHDIOCESE OF GALVESTON-HOUSTON, *PLAINTIFFS*,

v.

ALEX M. AZAR, II, THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, AND THE UNITED STATES OF AMERICA, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

> [T]he text of the Constitution . . . extends the judicial power only "to all Cases" and "to Controversies." It follows that courts . . . may not decide non-cases, which are not adversary situations and in which nothing of immediate consequence to the parties turns on the results.

Alexander M. Bickel, *The Supreme Court 1960 Term Foreword: The Passive Virtues*, 75 HARV. L. REV. 40, 42 (1961).

> It is most true that this court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction if it should. . . . We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution.

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) (Marshall, C.J.).

The Archdiocese of Galveston-Houston wants to create a program for sponsoring foster-care services in partnership with the State of Texas. But it contends that a 2016 Department of Health and Human Services' regulation

1

governing child-welfare funding forecloses that opportunity; its nondiscrimination provisions would require the Archdiocese to either compromise its sincerely held religious beliefs or refrain from serving children in the foster-care system. The Archdiocese and the State have sued to challenge that regulation.

Before the court is the defendants' motion to dismiss. Dkt. 22. I have reviewed the motion, response (Dkt. 37), and reply (Dkt. 41), as well as the applicable law. I also held a hearing on the motion. For the following reasons, the motion is granted.

## BACKGROUND

The plaintiffs—the State and the Archdiocese—sued HHS and Azar, its Secretary,[1] seeking injunctive, declaratory, and Administrative Procedure Act relief. They challenge the following HHS administrative regulations under the APA, Religious Freedom Restoration Act, the First Amendment, the Spending Clause, and the Nondelegation Doctrine:

> "(c) It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on non-merit factors such as age, disability, sex, race, color, national origin, religion, gender identity, or sexual orientation. Recipients must comply with this public policy requirement in the administration of programs supported by HHS awards.
>
> (d) In accordance with the Supreme Court decisions in *United States v. Windsor* and in *Obergefell v. Hodges*, all recipients must treat as valid the marriages of same-sex couples. This does not apply to registered domestic partnerships, civil unions or similar formal

---

[1] "HHS," as used in this opinion, refers to all the defendants collectively.

relationships recognized under state law as something other than a marriage."

45 C.F.R. § 75.300(c)–(d).

HHS has not enforced subsection (d) or the gender-identity and sexual-orientation portions of subsection (c). HHS also published a notification of proposed rulemaking to revise Section 75.300 and stated that subsections (c) and (d) "will not be enforced pending repromulgation."[2] Dkt. 22 at 5.

Nevertheless, the plaintiffs asked HHS to either rescind Section 75.300 or exempt Texas from its requirements. After receiving no response, the plaintiffs filed this suit. HHS later sent the State a letter (referred throughout as "the Texas Letter") concluding that "RFRA prohibits HHS from applying 45 C.F.R. § 75.300(c) and (d) against Texas with respect to the Archdiocese and other similarly situated entities." *See* Dkt. 41 at 4–5.

## STANDARD OF REVIEW

Rule 12(b)(1) requires dismissal if the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v.*

---

[2] The proposed amended version reads:

> "(c) It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services, to the extent doing so is prohibited by federal statute.
> (d) HHS will follow all applicable Supreme Court decisions in administering its award programs."

Dkt. 22 at 5. The comment period ended on December 19, 2019. *Id.* at 6–7. HHS submitted a draft final rule to the OMB for review on May 26, 2020, but, as a matter of course, its text is not made public. *See* Dkt. 41 at 3.

3

*City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party asserting jurisdiction bears the burden of proof. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Federal courts have jurisdiction over a claim between parties only if the plaintiff presents an actual case or controversy. U.S. CONST. art. III, § 2, cl. 1; *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001). "The many doctrines that have fleshed out that 'actual controversy' requirement—standing, mootness, ripeness, political question, and the like—are 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

To test whether the party asserting jurisdiction has met its burden, a court may rely upon: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[3] *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). When standing is challenged in a motion to dismiss, the court "must accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party." *Ass'n of Am. Physicians & Surgeons v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quotations omitted).

---

[3] That means I have considered the Texas Letter as an undisputed fact in the record, as HHS argues I should. *See* Dkt. 41 at 9.

4

## DISCUSSION

HHS argues that the case should be dismissed under Rule 12(b)(1) because there is no Article III case or controversy, and the court has no jurisdiction. It contends the plaintiffs' claims are moot because they challenge a rule that HHS has never enforced, has made clear that it will not enforce, and is in the process of reconsidering. Alternatively, HHS argues that even if the case is not moot, the plaintiffs do not have standing because they have not plausibly alleged an impending injury.

As to the mootness argument, the plaintiffs respond that the notice of non-enforcement is both revocable and temporary. In other words, just because the provisions have not been enforced does not change the fact that they are still effective law. As to the standing argument, the plaintiffs argue that the State would face severe financial penalties if HHS were to enforce Section 75.300, and the Archdiocese is "directly chilled" from developing a foster-care program.

I agree with HHS that the case is moot. Because that issue is dispositive, there is no need to address whether the plaintiffs have standing.

### A. What mootness standard applies to government defendants?

"Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quotation marks and citation omitted). A case is moot "when it is impossible for a court to

5

grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (quotations omitted). A defendant claiming mootness "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

Ordinarily, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth*, 528 U.S. at 189 (internal quotations omitted). "That is because '[t]he defendant is free to return to his old ways.'" *Texas v. EEOC*, 933 F.3d 433, 449 (5th Cir. 2019) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)). But a case may become moot "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189 (quotation omitted). The court must determine whether the "[d]efendants' actions are either 'mere litigation posturing' or actually extinguish the controversy." *Moore v. Brown*, 868 F.3d 398, 407 (5th Cir. 2017).

Within that inquiry, governmental-actor defendants are "accorded a presumption of good faith because they are public servants, not self-interested private parties." *Id.* "[W]hen a government entity assures a court of continued compliance, and the court has no reason to doubt the assurance, then the voluntary cessation doctrine does not apply." *Miraglia v. Bd. of Supervisors of La. State*

6

*Museum*, 901 F.3d 565, 572 (5th Cir. 2018). Courts therefore "assume that formally announced changes to official governmental policy are not mere litigation posturing." *Moore*, 868 F.3d at 407. So, while a government defendant must still make "absolutely clear" that the challenged conduct will not recur, it is afforded a "lighter burden" in proving it. *Id.* at 406–07.

### B. Do HHS's two assurances of non-enforcement moot this case?

HHS has not repealed the regulation—not yet anyway. But it has twice assured the plaintiffs that it would not enforce the challenged provisions. First, HHS published a notification in the Federal Register that "the regulatory actions, promulgated through the December 12, 2016 final rules . . . namely, the additions of . . . 75.300(c) and (d) . . . will not be enforced pending repromulgation." Notification of Nonenforcement of Health and Human Services Grant Regulation, 84 Fed. Reg. 63,809, 63,811 (Nov. 19, 2019). HHS explained that the 2016 rule raised "significant concerns about compliance with the requirements of the Regulatory Flexibility Act." *Id.* at 63,809. At the same time, HHS also issued a notice of proposed rulemaking to revise the challenged provisions in response to "several complaints, requests for exceptions, and lawsuits concerning § 75.300(c) and (d)," including concerns that the provisions violate RFRA, exceed HHS's statutory authority, and reduce the effectiveness of foster-care placement programs. 84 Fed. Reg. 63,831, 63,832 (Nov. 19, 2019).

Second, HHS sent the plaintiffs the Texas Letter, in which it directly addresses at least one of the plaintiffs' specific concerns: that application of Section

7

75.300(c) and (d) violates RFRA "because it requires current or potential program participants, including the Archdiocese, to refrain from discriminating on the basis of sexual orientation, gender identity, and same-sex marriage status as a condition of participation in the [State's Title IV-E Foster Care and Adoption Assistance] program."[4] *See* Dkt. 30-1 at 2. On this point, at least, HHS agrees with the plaintiffs. *Id.* In the detailed letter, HHS concludes that it "cannot enforce the sexual-orientation or gender-identity nondiscrimination requirements of § 75.300(c) or the same-sex marriage requirements of § 75.300(d) against Texas with respect to the Archdiocese . . . or other similarly situated entities . . . whose religious exercise would be substantially burdened in the same way [as] the Archdiocese." *Id.* at 3.

But the plaintiffs insist HHS has not gone far enough. They argue that because these two assurances fail to actually alter the challenged regulation, HHS has not met its burden to make "absolutely clear" that it will not be enforced in the future. In other words, because the notices of nonenforcement do not change the regulation as it appears on the books, they are not enough to meet even the lighter burden of proof afforded to government-actor defendants claiming mootness.

---

[4] The plaintiffs take issue with the fact that the Texas Letter comes from the Office of Civil Rights of HHS, rather than the Secretary directly. But as the letter states, "[t]he Secretary of HHS has charged OCR with investigating complaints 'alleging a failure by any departmental component to comply with RFRA,' to conduct compliance reviews, provide technical assistance regarding compliance, and initiate any other action 'as may be necessary to facilitate and ensure compliance with RFRA.'" Dkt. 30-1 at 2 (quoting Office for Civil Rights; Statement of Delegation, 84 Fed. Reg. 2,804 (Jan. 19, 2018)). So, because the plaintiffs raised a RFRA-related complaint with HHS, OCR was assigned to handle it. That the letter comes from an internal office within HHS rather than the Secretary himself, I find, is of no moment.

The plaintiffs lean heavily on *Texas v. Equal Employment Opportunity Commission*, 933 F.3d 433 (5th Cir. 2019). In that case, Texas sued the EEOC to challenge its guidance on employers' use of criminal records in hiring. *Id.* at 437. Because only the Attorney General—not the EEOC itself—can bring Title VII suits against state employers, the guidance required EEOC staff to issue referrals to the Attorney General when a state employer used a categorical felon-hiring ban. *Id.* at 439, 443. Nevertheless, the Associate Attorney General issued a general memorandum to civil-litigation heads within the Department of Justice instructing that in affirmative civil-enforcement cases, the DOJ could not use its enforcement authority to effectively convert the agency guidance into binding rules. *Id.* at 449–50. But that was it—that was the only indication that the Attorney General would not honor referrals from the EEOC based on the challenged guidance. *Id.* at 450. The Fifth Circuit held there was "no direct evidence that the Attorney General ha[d] committed *not* to honor referrals from EEOC based on the [g]uidance," so there was no reason for Texas to believe the challenged conduct would cease. *Id.* at 449 (emphasis in original). Without more, this "broad memorandum" did not make it absolutely clear the challenged behavior could not be reasonably expected to recur, and the court held the case was not moot.[5] *Id.* at 450.

---

[5] The court *sua sponte* considered mootness as part of its independent and ever-present obligation to determine whether jurisdiction exists. *See id.*

9

That is quite different from what has happened here. The memorandum in *EEOC* provided no specific assurance of non-enforcement against the plaintiff. *See id.* at 449–50. Indeed, the Attorney General even endorsed parts of the EEOC guidance. *Id.* at 450. But here, HHS issued both a public memorandum committing to not enforce the challenged provisions pending repromulgation and a letter directly to the plaintiffs in which it agreed with the plaintiffs' position and concluded RFRA prohibits HHS from applying the challenged provisions against Texas with respect to the Archdiocese and other similarly situated entities. That is far from "no direct evidence" of a commitment to nonenforcement. To the extent that one of HHS's statements of nonenforcement does not do away with the plaintiffs' concerns, the other covers up its sins. HHS has done enough to meet its "lighter burden" of proving it will not enforce the challenged provisions against the plaintiffs.

Instead, this case looks more like *Moore*. *See* 868 F.3d 398. In *Moore*, the plaintiff challenged a rule requiring a permit for public events in a park. *Id.* at 401. After city personnel informed the plaintiff that he would need a permit to continue his activity in the park, he sued a group of state officials to challenge the rule's constitutionality. *Id.* at 401–02. The defendants subsequently wrote the plaintiff and made clear the public-event rule would not be enforced against him because his activity did not constitute a public event. *Id.* at 402. In response to the plaintiff's motion for preliminary injunction, the defendants explained that once they read the complaint and understood the plaintiff's plans, they determined the rule did

10

not apply to his desired activity. *Id.* at 407. The Fifth Circuit agreed that the public-event-rule claim was moot after the defendants previously "mistakenly barred" constitutionally protected conduct but later issued a "statement of non-enforcement." *Id.* And, importantly, the court held that the defendants' promise to not prosecute the plaintiff was sufficient to meet the "'lighter' burden to prove that the challenged conduct will not recur." *Id.* (citing *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014)).

That rings true here. In the nonenforcement notice, HHS unequivocally states that it will not enforce the challenged provisions pending repromulgation. 84 Fed. Reg. at 63,811. And in the Texas Letter, HHS agrees that RFRA precludes enforcement of the provisions in the plaintiffs' case. Following *Moore*'s logic, the plaintiffs' claims in this case are moot based on HHS's concession that enforcing the challenged provisions against the State as it pertains to the Archdiocese or other similarly situated entities would violate RFRA.

But the plaintiffs contend *Moore* is inapplicable because the *Moore* defendants agreed that the challenged rule did not apply to the plaintiff. Here, in contrast, the defendants instead say that the plaintiffs' desired activity would violate the regulation, but they cannot enforce it against the Archdiocese because doing so would violate RFRA. That distinction is irrelevant to the mootness inquiry. The key question is whether the governmental entity has promised not to enforce the rule—not why it decided to do so. And in both *Moore* and this case, the government has explicitly stated it will not enforce the challenged rule. That is

11

what the court must consider in deciding mootness, and HHS has met its burden. In other words, the defendants' actions have "actually extinguish[ed] the controversy." *See Moore*, 868 F.2d at 407. And with no controversy, there is no jurisdiction.

### C. What if HHS changes course?

The plaintiffs also posit that without repealing the regulation, HHS could start enforcing the challenged provisions at any time. Thus, they contend, because this court could hold the unenforced regulation unconstitutional and foreclose the possibility of HHS's change of heart, the case is not moot. *See Knox*, 567 U.S. at 307 (holding a case is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party") (quotations omitted).

For this point, the plaintiffs rely on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). In *Lyons*, the Supreme Court refused to declare the claims moot even though the city imposed a six-month moratorium on the challenged conduct. *Id.* at 100–01. But *Lyons* is readily distinguishable from this case as the city's moratorium was explicitly limited by its terms. *See id.* at 101 ("[T]he case is not moot, since the moratorium by its terms is not permanent. Intervening events have not 'irrevocably eradicated the effects of the alleged violation.'" (quoting *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)). The same logic applies to *Spell v. Edwards*, 962 F.3d 175 (5th Cir. 2020), in which the Fifth Circuit found the appeal moot when the challenged order had already expired by its own terms. *Id.* at 179. HHS's two statements of nonenforcement, on the other hand, are not similarly

12

timebound. While the plaintiffs take issue with the "pending repromulgation" language in the notice of nonenforcement, it makes good sense: HHS can promise not to enforce a provision only while it is in effect. And it cannot commit to nonenforcement of a provision that has not yet been promulgated.

If the notice of nonenforcement is not clear enough, the Texas Letter provides plain-spoken and forthright reassurance. In it, HHS agrees that enforcing the challenged provisions against the State as it pertains to the Archdiocese violates RFRA. That's it. The Texas Letter neither burdens its promise with some artificial deadline nor otherwise qualifies HHS's position. As discussed above, that is enough to meet a government defendant's burden of proof to convince a court the case is moot. *See Miraglia*, 901 F.3d at 572 ("[W]hen a government entity assures a court of continued compliance, and the court has no reason to doubt the assurance, then the voluntary cessation doctrine does not apply."). Because HHS has given no reason to suggest otherwise, I take it as its word.

There is another reason HHS's concession that the regulation violates RFRA means this case is moot. "Essential to the concept of a controversy, under Article III, is an on-going adversarial posture between the parties before the court." *In re S.L.E., Inc.*, 674 F.2d 359, 364 (5th Cir. 1982). As some of the leading commentators on federal litigation have suggested:

> All models of cases and controversies begin with the premise that there must be a conflict of interest between at least two genuinely adversary parties. Adversariness is desired in part to establish the need for any adjudication—courts have defined judicial power in relation to the need to resolve conflicting interests. In addition, the

13

> self-interests of the adversaries are relied upon to provide the foundation for sound adjudication. Judicial power is not exercised to offer advice to a single party, nor to review and confirm the wisdom of private settlements already reached and honored. Neither is judicial power exercised when courts doubt the existence of sufficient adversary interest to stimulate the parties to a full presentation of the facts and arguments. These policies are reflected in the rules against advisory opinions and in the doctrines of standing, ripeness, and mootness, which address the quality of adversariness in a refined—if often confusing—attempt to measure the need for adjudication and the probable litigating capacities of the parties.

13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3530 (3d ed. 2020).

In other words, if the parties are not adverse—if they don't disagree on what the court has been called upon to decide—there is no case or controversy. Here, both the plaintiffs and HHS agree that enforcing the regulation at issue against the Archdiocese and similarly situated parties would violate RFRA. The plaintiffs want this court to issue a declaratory judgment stating exactly that. But if I were to do so, of what value would that declaration be? It would not be the product of "a full presentation of the facts and arguments" by self-interested opponents—the very essence of our adversarial system. *Id.* And thus it would not present the court with a case or controversy. *See S.L.E.*, 674 F.2d at 364 ("Mootness is one of the doctrines reflecting on the essential adversarial element."). Without a live controversy, "it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party." *Knox*, 567 U.S. at 307 (quoting *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

14

Finally, the plaintiffs also worry that a change in the presidential administration or development in related litigation in other jurisdictions may cause the HHS to change course—to not move forward with repromulgating the proposed draft and enforce the challenged provisions as they stand. Even if those concerns are realized, that does not change the answer to the mootness question today. *See Owen v. Regence Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1318, 1324 (D. Utah 2005) ("mootness requires the court to ask whether standing exists as the case now stands").

The plaintiffs "might think that, in the grand scheme of things, this jurisdictional defect is fairly insignificant." *McGirt v. Oklahoma*, 591 U.S. \_\_\_\_ (2020) (Thomas, J., dissenting) (citing *Royal v. Murphy*, 584 U. S. \_\_\_\_ (2018)). "But our desire to decisively 'settle [important disputes] for the sake of convenience and efficiency' must yield to the 'overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere.'" *Id.* (quoting *Hollingsworth v. Perry*, 570 U. S. 693, 704–705 (2013) (internal quotation marks omitted)). Because HHS has made "absolutely clear" that the challenged provisions will not be enforced against the State as it pertains to the Archdiocese, this case is moot.

\* \* \*

Since the case is moot, there is no need to consider whether the plaintiffs otherwise have standing. For the reasons stated above, the defendants' motion to dismiss is granted. Dkt. 22. Final judgment will be separately entered.

SIGNED on Galveston Island this 5th day of August, 2020.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE